■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TIMOTHY G. GUTKAISS, Appellant. [614 NYS2d 599] —White, J. Appeal from a judgment of the County Court of Washington County (Berke, J.), rendered June 1, 1993, upon a verdict

convicting defendant of the crime of sodomy in the first degree.

Responding to a child abuse hotline report, State Police Investigator Thomas Aiken on July 27, 1992 interviewed two boys, ages 11 (hereinafter victim A) and eight (hereinafter victim B), who related they were sexually abused by defendant on several occasions in 1987 and 1988. Aiken arrested defendant the next day and brought him to a State Police barracks where defendant gave a written statement denying any sexual contact with the victims. Thereafter, defendant was indicted and, following trial, convicted of the crime of sodomy in the first degree. Defendant appeals.

Defendant's first argument for reversal centers on the facts surrounding his arrest. It appears that during the summer of 1992 the victims' stepfather and defendant were engaged in the construction of a camp at Summit Lake in the Town of Argyle, Washington County. In order to effect defendant's arrest, Aiken had the victims' stepfather call defendant to have him come to Summit Lake on the pretext that some construction work had to be done on the camp. When defendant arrived at the construction site, he was arrested. Defendant contends that his arrest was unlawful because it was the "functional equivalent" of a warrantless arrest inside a home which is proscribed by the 4th Amendment of the US Constitution (see, Payton v New York, 445 US 573).

We disagree. Although defendant's arrest was accomplished by means of a calculated police ruse, the deception was not "so fundamentally unfair as to deny due process" (People v Tarsia, 50 NY2d 1, 11; see, People v Rosario, 186 AD2d 598, lv denied 81 NY2d 794). Moreover, there was no physical entry, no invasion of privacy and sanctity of the home and, most importantly, defendant was not compelled or coerced by the police to leave his home (see, People v Coppin, 202 AD2d 279; People v Roe, 136 AD2d 140, affd 73 NY2d 1004).

At his suppression hearing, defendant testified that when he was arrested he asked Aiken if he had a right to a lawyer and that Aiken said there was no need for one. Aiken, on the other hand, testified that defendant did not request an attorney or invoke his right to counsel when given his *Miranda* rights. County Court credited Aiken's testimony over that of defendant and denied defendant's motion to suppress his written statement. In view of the great weight accorded a hearing court's suppression determinations, and in the absence of any basis in the record for finding that County

Court's resolution of the credibility issue was clearly erroneous, there is no reason to disturb its determination of defendant's motion (see, People v Carbone, 184 AD2d 648; People v Sprow, 173 AD2d 509, lv denied 78 NY2d 975).

We agree with defendant that the indictment returned against him improperly joined other charges and other defendants (see, CPL 200.40 [1]). County Court, however, properly cured this defect when it granted defendant's pretrial motion for a severance (see, People v Minor, 49 AD2d 828).

In defendant's view a violation of his constitutional rights occurred when County Court denied him access to the victims' school, counseling and medical records and the medical records pertaining to the suicide of the victims' father. Inasmuch as defendant sought these records merely in the hope of discovering material to impeach the victims' credibility, County Court acted properly in denying defendant access (see, People v Chatman, 186 AD2d 1004, lv denied 81 NY2d 761; People v Chang Gee Kim, 144 AD2d 572, lv denied 73 NY2d 975; People v Tissois, 131 AD2d 612, affd 72 NY2d 75). We note that defendant was not prejudiced by the denial since County Court conducted an in camera review and determined that there was no Brady or Rosario material contained in these records.

We further find that County Court did not abuse its discretion in denying defendant's request for an independent psychiatric examination of victim A since the CPL does not authorize such procedure (see, CPL 240.20 [1] [c]). Moreover, when measured against the traumatic effect this type of examination would have on the victim, there is nothing in the record justifying such an examination in the interest of justice (see, People v Beauchamp, 126 Misc 2d 754).

According to defendant, a few days before trial the People turned over a letter from a doctor indicating that victim A suffered from hallucinations as the result of being sodomized.* Despite defendant's pretrial Brady request for "all evidence favorable to the defense", the People's allegedly tardy response to defendant's request is not ground for reversal. First, assuming the letter is Brady material, because defendant did not make a specific Brady request for medical reports, reversal is not mandated due to defendant's failure to establish that, had the letter been disclosed sooner, there is a reasonable probability that the result of the trial would have been

---

* The People, in their brief, contend that this letter was provided to defendant well in advance of trial.

different *(see, People v Vilardi,* 76 NY2d 67, 73-76; *People v Lent,* 204 AD2d 855).* Second, defendant had a meaningful opportunity to use the purportedly exculpatory information in his defense since he was able to question victim A, his mother and his physician regarding victim A's medications and hallucinations *(see, People v Cortijo,* 70 NY2d 868).

Defendant has drawn our attention to the prosecutor's opening and closing statements, which he contends contain inappropriate comments amounting to prosecutorial misconduct that served to deny him a fair trial. Unless defendant can establish substantial prejudice, reversal on the ground of prosecutorial misconduct is not an appropriate remedy *(see, People v Galloway,* 54 NY2d 396, 401; *People v White,* 196 AD2d 641, *lv denied* 82 NY2d 854).

Here, some of the prosecutor's statements in her opening were emotive rather than factual. However, any prejudice to defendant was negated or minimized by County Court's prompt intercession to admonish the prosecutor to "stick with the proof" and its instructions to the jury that their decision must be based on the evidence and not affected in any way by sympathy *(see, People v De Tore,* 34 NY2d 199, 207-208, *cert denied* 419 US 1025).* Clearly, defendant was not prejudiced by the prosecutor's remarks during summation regarding victim B since he was acquitted of all charges relating to victim B.

Defendant further claims he was prejudiced by the fact that victim A held a teddy bear while he testified. We disagree since County Court informed the jury that the teddy bear had "nothing to do with the truth or falsity of this witness' *[sic]* testimony, * * * you should [not] consider and evaluate the witness on [the] basis * * * he had a teddy bear in his possession". Additionally, permitting victim A to hold the teddy bear was entirely appropriate in view of Executive Law § 642-a (4), which directs the Judge presiding at a trial of this type to be sensitive to the psychological and emotional stress a child witness may undergo when testifying.

In instructing the jury on reasonable doubt, County Court made use of the terms "substantial uncertainty" and "sound substantial reason", phrases which have been subject to criticism by some courts. However, we find that the charge as a whole correctly conveyed the proper standard to the jury *(see, Victor v Nebraska,* 511 US —, 114 S Ct 1239; *People v Dunn,* 204 AD2d 919 [considering the same charge as involved here]).* As the United States Supreme Court stated in the recent case of *Victor v Nebraska (supra),* the Federal Constitution does not dictate that any particular form of words be used in advising

the jury of the government's burden of proof, so long as the charge, when taken as a whole, correctly conveys the concept of reasonable doubt. Accordingly, we reject defendant's contention that he was prejudiced by this aspect of County Court's charge.

Finally, considering the abhorrent crime defendant perpetrated on this young defenseless child, his lack of remorse and the absence of any mitigating factors, the imposition of the most severe sentence possible was not harsh or excessive.

For these reasons, we affirm.

Cardona, P. J., Mikoll, Crew III and Casey, JJ., concur. Ordered that the judgment is affirmed, and matter remitted to the County Court of Washington County for further proceedings pursuant to CPL 460.50 (5).