1998-NMCA-010

951 P.2d 1070

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Roy MARQUEZ, Defendant–Appellant.**

No. 18073.

Court of Appeals of New Mexico.

Nov. 20, 1997.

Certiorari Denied Jan. 6, 1998.

410

Tom Udall, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Phyllis H. Subin, Chief Public Defender, Carolyn R. Glick, Assistant Public Defender, Santa Fe, for Defendant–Appellant.

## OPINION

FLORES, Judge.

1. Defendant was convicted by a jury of two counts of criminal sexual penetration of a minor, one count of kidnapping, and one

count of intimidation of a witness. Defendant appeals from the trial court's judgment and sentence. On appeal, Defendant contends that the trial court deprived him of a fair trial by allowing the 12–year old child Victim to testify holding a teddy bear. Additionally, he contends that he was denied his defense when the court allowed an amendment to the indictment which changed the year of the alleged crime from 1992 to 1993, and when the trial court disallowed testimony from a witness to the effect that Victim's mother frequently asked Defendant for money. We affirm.

*FACTS*

2. The events leading up to Defendant's convictions were alleged to have taken place on June 23, 1992. Victim was then nine years old and knew Defendant because he was her aunt's boyfriend. Victim testified that she saw Defendant and asked him for a ride to her grandmother's home, then church. Victim stated that Defendant agreed, but instead drove Victim for a Coke, to his home, then down a dirt road. He allegedly then took off her clothes, hit her, raped and sodomized her. Victim stated that Defendant threatened to have his cousins kill her parents if she told anyone. Victim did not tell anyone about the incident for over two years. She finally told her aunt, resulting in an indictment against Defendant.

*DISCUSSION*

*Use of a Teddy Bear*

3. Defendant claims that the 12–year old Victim's testimony while holding a white teddy bear, approximately 12 by 18 inches in size, was prejudicial and deprived him of a fair trial. He claims the use of the teddy bear created a prejudicial impact making Victim appear more vulnerable and more appealing as a child than she already was.

4. Initially we note that while no specific rule addresses this particular situation directly, our rules of criminal procedure do address situations where a child witness may be too apprehensive to testify. *See* Rule 5–504, NMRA 1997. Rule 5–504(A) allows for the use of videotape testimony upon a "showing that the child may be unable to testify without suffering unreasonable and unnecessary mental or emotional harm." The trial court must make the requisite findings that the individualized harm to a child victim outweighs defendant's right to a face-to-face confrontation with his accusers. *See State v. Fairweather,* 116 N.M. 456, 463, 863 P.2d 1077, 1084 (1993) ("The reason that a trial judge is required to make individualized findings justifying a deviation from the standard trial procedure of face-to-face confrontation in front of the jury is so that an appellate court may review those findings in determining whether the trial court properly balanced the defendant's Sixth Amendment right and the special need for protection of the child witness."); *see also State v. Benny E.,* 110 N.M. 237, 240–42, 794 P.2d 380, 383–85 (Ct.App.1990) (use of video monitor and testimony in judge's chambers invalid because particularized findings of special harm were not supported by substantial evidence).

5. In addition, trial courts are allowed latitude in exercising "reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, ... and (3) protect witnesses from harassment or undue embarrassment." Rule 11–611(A), NMRA 1997. The exercise of the trial court's authority under Rule 11–611 is reviewed for an abuse of discretion. *See State v. Smith,* 92 N.M. 533, 539, 591 P.2d 664, 670 (1979).

6. Other jurisdictions have addressed the issue of allowing child victims comfort items or other comfort measures to facilitate testimony. In *State v. Palabay,* 9 Haw.App. 414, 844 P.2d 1 (1992), the appellate court held it was error to allow a 12–year old witness to testify holding a teddy bear, *absent* the finding of necessity. *Id.,* 844 P.2d at 5–7. The child witness began testifying with the teddy bear, unnoticed by defense counsel. *Id.* at 5. When the witness was asked to walk over to an exhibit board, defense counsel noticed the teddy bear and objected. *Id.* The trial court overruled defendant's first objection, but sustained a later objection to the presence of the teddy bear. *Id.* While the trial court was in error because it had not made findings of necessity, the appellate court held the error

was harmless and affirmed the conviction. *Id.* at 10–11.

7. In *State v. Cliff,* 116 Idaho 921, 782 P.2d 44 (Idaho.Ct.App.1989), the Idaho Court of Appeals refused to disturb the trial court's ruling that allowing an eight-year old child victim to testify while holding a doll would have a calming effect on the child and that the benefit of having coherent testimony from the child outweighed any possible prejudice to defendant. *Id.,* 782 P.2d at 46–47. The trial court heard testimony from the guardian ad litem that the child victim had started to have dry heaves while on the stand during the preliminary hearing; that the child tended to "wring her hands, put her hands on her face and chew her nails" when she was upset. *Id.* at 46. The guardian ad litem stated that in his opinion giving the child a doll would give her something to do with her hands. *Id.* The appellate court stated that the trial court made an appropriate decision in achieving "a balance between the defendant's right to a fair trial and the witness's need" for a calming environment. *Id.* at 47. Additionally, the trial court "felt that allowing the child to possess a doll on the stand was a less stringent measure than some that had been accepted by the United States Supreme Court, or required by some state statutes." *Id.* (citation omitted).

8. In *People v. Gutkaiss,* 206 A.D.2d 628, 614 N.Y.S.2d 599 (1994), the appellate court found no error in allowing the child victim to hold a teddy bear while testifying because of an executive law providing for trial courts to be sensitive to the needs of children testifying and because the court gave a jury instruction to disregard the bear. New York Executive Law Section 642–a(4) directs the judge presiding at a sexual abuse trial involving a child to "be sensitive to the psychological and emotional stress a child witness may undergo when testifying." *Id.,* 614 N.Y.S.2d at 602. Section 642–a of the New York Executive Laws, entitled "Guidelines for fair treatment of child victims as witnesses", directs courts and counsel to take steps to minimize the impact of court proceedings on child victim witnesses. N.Y. Exec. Law § 642–a (Consol.1997). Various provisions address the use of closed-circuit televisions, support persons, as well as guidelines for judicial sensitivity, suggested use of the same prosecutor, and recommendations to minimize the number of times the child must recite the events of the case. *Id.*

9. In a decision that is clearly distinguishable, the Arizona Supreme Court overturned a murder conviction due to the victim's daughter testifying with a doll. *State v. Gevrez,* 61 Ariz. 296, 148 P.2d 829 (1944). In *Gevrez* the record showed that the prosecution arranged for the victim's daughter to hold a doll which had belonged to her deceased mother, presumably as a trial tactic. *Id.,* 148 P.2d at 833. *Gevrez* focussed more on the fact that this tactic had been prearranged and staged by the prosecution to arouse the sympathy of the jury. *Id.*

10. Also, a number of courts have found no reversible error when a support person accompanied a young victim-witness while testifying. Carol A. Crocca, Annotation, *Propriety and Prejudicial Effect of Third Party Accompanying or Rendering Support to Witness During Testimony,* 82 A.L.R.4th 1038 (1990). Courts in several states have allowed a parent, relative, friend, guardian ad litem, school employee, clergyman, prosecutor or others to accompany the victim on the witness stand. *Id.* at 1041. Some states have statutes or rules providing for such testimony. *Id.* at § 2[a] n.6. Even with rules in place to accommodate a child witness victim, a California appellate court found harmless error when the rule requiring the finding of necessity for a child victim witness to use a support person was neglected. *People v. Kabonic,* 177 Cal.App.3d 487, 223 Cal.Rptr. 41 (1986); 82 A.L.R.4th at 1043 § 3.

11. Under federal law, 18 U.S.C.A. § 3509(i)(1993) allows the use of adult attendants to accompany a child on the witness stand in federal trials. The act provides that the court "may allow the adult attendant to hold the child's hand or allow the child to sit on the adult attendant's lap throughout the course of the proceeding ." *Id.*

12. Even the use of prosecutors as support persons has been upheld as not being prejudicial error, and therefore not reversible, despite appellate courts being critical of the practice. The Alabama Court of Crimi-

nal Appeals and the 11th Circuit upheld a rape conviction, even though the five-year old victim sat on the prosecutor's lap during the direct, cross-examine and redirect testimony. *Sexton v. State*, 529 So.2d 1041 (Ala.Crim. App.1988); *Sexton v. Howard*, 55 F.3d 1557 (11th Cir.1995). While the appellate courts did not condone this conduct, the decision was left to the trial court because it "was in the best position to determine what, if any, probable effect this action would have on the jury." *Sexton v. State*, 529 So.2d at 1044. The 11th Circuit stated that considering the totality of evidence of defendant's guilt, any error was harmless. *Sexton v. Howard*, 55 F.3d at 1560.

### The Trial Court's Finding of Necessity for Victim to Hold a Teddy Bear

13. We review the trial court's decision to allow the child Victim to testify with a teddy bear under an abuse of discretion standard. An abuse of discretion will be found only when the trial court's decision is clearly untenable or contrary to logic and reason. *State v. Woodward*, 1995 NMSC 082, ¶ 6, 121 N.M. 1, 908 P.2d 231.

14. Defense counsel raised the issue of the 12–year old child Victim testifying with a teddy bear during pre-trial motions (just prior to the start of the trial). Victim had previously testified with the teddy bear before the grand jury. She had also given a videotaped interview at a shelter without the teddy bear. The defense contended that having the Victim testify with the aid of a teddy bear would be prejudicial. Defense counsel argued that the teddy bear was a prop that signified to the jury a child's innocence and childishness and presented a visual signal to the jury. The court recognized that 12–year olds are of varying levels of maturity and that some 12–year olds would have a need for such security while others would not need a comfort item. The prosecution argued that it was appropriate to allow the Victim to hold the teddy bear to assist her in coping with the traumatic situation of testifying and that a 12–year old was still a child. The court stated, "I honestly don't see any visual signal given to the jury by the presence of a teddy bear, but I'll certainly talk

with her about whether it's an issue that we need to deal with or not. I'll ask questions."

15. Immediately after opening statements, the jury was recessed and the court and defense counsel questioned Victim about the need for the teddy bear. The court asked Victim her name, asked about telling the truth, her age, her birthday, about school, including what grade she was in, her academic performance and what grade she had repeated. The court also asked a series of questions about the teddy bear. The trial court then allowed defense counsel to ask Victim questions relating to the teddy bear.

16. Defense counsel asked the trial court to have her try to testify without the teddy bear, but if she needed it that he would not object. The court stated that it believed that following that procedure would just emphasize the role of the teddy bear. The court ruled that Victim could testify holding the teddy bear. The court stated, "I'm not inclined to make this situation anymore difficult. She's indicated that she prefers the teddy bear. I can't see that the jury would be prejudiced by its presence. Counsel is certainly free to ask questions concerning its presence, but I'm not going to bar it."

17. The trial court determined that Victim would be comforted by the use of the teddy bear. We cannot say that his decision was untenable, nor contrary to logic and reason. *See Woodward*, 1995 NMSC 082, ¶ 6, 121 N.M. 1, 908 P.2d 231. While there were no requests to use videotape testimony in this case, the trial court adopted a less stringent measure to aid a child victim in testimony than is allowed by Rule 5–504. The trial court questioned Victim, observed her demeanor, and made a finding that she would be more comfortable with the teddy bear during difficult testimony. The trial court properly balanced the prejudicial effect of the teddy bear against the necessity of the teddy bear's calming effect. Therefore, we hold that it was not error for the trial court to allow Victim to testify with a teddy bear.

### Amendment of Indictment

18. Defendant claims that he was denied his defense because the trial court allowed the indictment to be amended. The

original indictment charged that the various offenses were committed "on, about or between the Spring, 1992 and/or the Summer, 1992[.]" Victim testified that she was nine years old on the date of the alleged incident, and that it was the day of her twin cousins' tenth birthday party. During trial it was discovered that Victim was nine years old on June 23, 1993, not June 23, 1992.

19. The trial court granted the State's motion to amend the indictment to conform to the evidence reflecting the correct date of the incident. The trial court noted that Defendant was not relying on an alibi defense and ruled that Defendant was not prejudiced by the amendment. The trial court gave Defendant the opportunity to request a continuance if he needed more time "to attempt to ascertain if there's a possible alibi that would be available," regarding the 1993 date. Defense counsel, after a discussion with Defendant, stated that "a delay is not going to assist materially in this matter."

■ 20. Rule 5–204(C), NMRA 1997 states:

No variance between those allegations of a complaint, indictment, information or any supplemental pleading which state the particulars of the offense, whether amended or not, and the evidence offered in support thereof shall be ground for the acquittal of the defendant unless such variance prejudices substantial rights of the defendant. The court may at any time allow the indictment or information to be amended in respect to any variance to conform to the evidence. If the court finds that the defendant has been prejudiced by an amendment, the court may postpone the trial or grant such other relief as may be proper under the circumstances.

A variance is not fatal unless the accused cannot reasonably anticipate from the indictment what the nature of the proof against him will be. *State v. Johnson*, 105 N.M. 63, 66–68, 728 P.2d 473, 476–78 (Ct.App.1986); *State v. Ross*, 100 N.M. 48, 52, 665 P.2d 310, 314 (Ct.App.1983). "The mere assertion of prejudice, without more, is insufficient to establish prejudicial error warranting reversal of a conviction." *Fairweather*, 116 N.M. at 463, 863 P.2d at 1084.

21. Defendant appears to have been aware of the nature of the charges against him. He knew the identity of the alleged Victim, and he was aware of the mistake in the date from the beginning of the trial. When the trial court allowed amendment of the date, the court offered Defendant a continuance, which Defendant chose not to accept. The remedy afforded for prejudice by an amendment is to "postpone the trial or grant such other relief as may be proper under the circumstances." Rule 5–204(C). Additionally, Defendant did not rely upon an alibi defense. Therefore, Defendant was not prejudiced by the amendment of the indictment during the trial. We hold that the trial court did not err in allowing the indictment to be amended.

### Testimony of Corroborating Witness

■ 22. Defendant argues that he was denied his defense when the trial court ruled that he could not present the testimony of a corroborating witness. The trial court determined that the testimony could have some limited relevance on the issue of bias, but that its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by consideration of undue delay, waste of time or needless presentation of cumulative evidence.

23. Defendant testified himself that Victim's mother had coerced Victim into making up the story because Victim's mother and her husband used to demand money from Defendant at his place of work. The trial court did not allow corroboration of this testimony by a co-worker of Defendant. The court made a finding that testimony of an additional witness to the same incident was cumulative evidence and was too prejudicial.

■ 24. "[D]etermining whether the prejudicial impact of evidence outweighs its probative value is left to the discretion of the trial court." *State v. Wilson*, 117 N.M. 11, 17, 868 P.2d 656, 662 (Ct.App.1993). Admission or exclusion of evidence is a matter within the discretion of the trial court and the trial court's determination will not be disturbed on appeal in the absence of a clear

**415**

abuse of that discretion. *State v. Worley,* 100 N.M. 720, 723, 676 P.2d 247, 250 (1984). Also, the trial court in its discretion may properly exclude cumulative evidence. *State v. Lovato,* 91 N.M. 712, 715, 580 P.2d 138, 141 (Ct.App.1978).

25. In this instance, there is no evidence that the trial court abused its discretion. The trial court heard from both sides, allowed Defendant to testify to his theory of bias and did not allow cumulative evidence. The trial court was concerned about creating "a trial within a trial." Under these circumstances, we hold that it was not error to exclude this cumulative evidence.

*CONCLUSION*

26. For the foregoing reasons, we affirm Defendant's convictions on all counts.

27. **IT IS SO ORDERED.**

ALARID and APODACA, JJ., concur.