# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                        **NO. 26,570**

**STEPHEN BLEA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Richard J. Knowles, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

Max Shepherd, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Vicki W. Zelle, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**FRY, Chief Judge.**

Defendant appeals his conviction for larceny (over $250). On appeal, Defendant argues that (1) there was insufficient evidence to support his conviction

under a theory of accomplice liability, and (2) the district court improperly excluded documentary evidence related to his military status. We are unpersuaded by Defendant's arguments and therefore affirm.

**SUFFICIENCY OF THE EVIDENCE**

We review the evidence to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Under this standard, we view the evidence in the light most favorable to support the guilty verdict, and indulge all reasonable inferences and resolve all conflicts in the evidence in favor of upholding the verdict. *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We do not reweigh the evidence or substitute our judgment for that of the fact-finder so long as there is sufficient evidence to support the verdict. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319.

To convict Defendant for larceny (over $250), the State was required to prove beyond a reasonable doubt that Defendant took and carried away a television, a JVC receiver, an AC adaptor, a bass speaker, and a monster cable belonging to another, with a market value over $250; that at the time he took this property, Defendant

intended to permanently deprive the owner of it; and that this happened on or about February 21, 2004. *See* NMSA 1978, § 30-16-1 (1987) (amended 2006). To convict Defendant, even if he did not directly perform the acts constituting larceny under a theory of accomplice liability, the State was required to prove beyond a reasonable doubt that Defendant intended that the crime be committed; that the crime was committed; and that Defendant helped, encouraged or caused the crime to be committed. *See* NMSA 1978, § 30-1-13 (1972) (defining the theory of accessory liability); *State v. Carrasco*, 1997-NMSC-047, ¶ 6, 124 N.M. 64, 946 P.2d 1075 (recognizing that a defendant who aids or abets in the commission of a crime is equally culpable as the principal).

Defendant does not contest that his cousin Michael Blea took items from Victim's residence with the intent to permanently deprive Victim of such items and that the items had a value over $250. Instead, Defendant argues that the evidence was insufficient to show that his own "presence at the scene of the home invasion [made] him a party to the burglary." We agree that "[n]either presence, nor presence with mental approbation is sufficient to sustain a conviction as an aider or abettor," and that "[p]resence must be accompanied by some outward manifestation or expression of approval." *State v. Phillips*, 83 N.M. 5, 7, 487 P.2d 915, 917 (Ct. App. 1971); *see*

3

*State v. Duran*, 86 N.M. 594, 595, 526 P.2d 188, 189 (Ct. App. 1974) (holding that an aider and abettor must share the criminal intent of the principal and there must be a community of purpose or partnership in the unlawful undertaking). But, as discussed below, the facts and circumstances surrounding Defendant's presence and conduct support a finding that his role exceeded that of mere "propinquity to his cousin," as characterized by Defendant. *See Phillips*, 83 N.M. at 7, 487 P.2d at 917 (recognizing that evidence of aiding and abetting may be accomplished "by acts, conduct, words, signs, or by any means sufficient to incite, encourage or instigate commission of the offense or calculated to make known that commission of an offense already undertaken has the aider's support or approval" (internal quotation marks and citations omitted)).

Evidence was presented that Defendant drove his cousin to Victim's apartment after leaving a bar at 2:00 a.m., backed his truck into a nearby parking space, and sat outside his truck smoking a cigarette while his cousin took items from Victim's apartment and loaded them into the truck. Victim testified that she was alone in the apartment when she was awakened by knocking on her door at 3:00 in the morning. Victim testified that when she opened the door a little bit, the cousin put his foot in the door, forced his way in, and knocked her down. After the cousin prevented her from

4

calling the police, Victim testified that she was able to run out of the house to seek help. Victim testified that she screamed, "Call the cops[,] [c]all the cops" as she ran by a man she subsequently identified as Defendant, who stood by his truck with its tailgate down and simply looked at her and did nothing. During the time she was running and seeking help, Victim testified that the cousin was chasing and verbally threatening her, as well as loading items taken from her apartment into Defendant's truck.

A passing motorist testified that Victim flagged him down for help and that he saw Defendant's truck backed into the parking lot. The motorist testified that he later saw the truck leaving the scene of the crime. Based on information provided by the motorist, an officer subsequently stopped the truck occupied by Defendant and his cousin. Items taken from Victim's residence were in the bed of Defendant's truck.

We conclude that the foregoing evidence supports a reasonable inference that Defendant was not merely present, but that he also "helped, encouraged or caused the crime to be committed." *See* § 30-1-13 (accessory liability). In this regard, a jury could reasonably conclude that Defendant facilitated the larceny by taking his cousin to his criminal venture, serving as a lookout, enabling his cousin to load the items in the truck by backing into the parking lot and opening the tailgate, and then

5

transporting the stolen items in his truck. *See State v. Bankert*, 117 N.M. 614, 619-20, 875 P.2d 370, 375-76 (1994) (holding that the defendant's actions, which included being the transporter of the drugs by way of his personal vehicle, sufficiently demonstrated accomplice status); *State v. Padilla*, 118 N.M. 189, 192-93, 879 P.2d 1208, 1211-12 (Ct. App. 1994) (holding that the defendant's act of driving the getaway car quickly from robbery scene supported conviction for aiding and abetting a robbery).

We note that even if the jury believed that Defendant's initial involvement was innocent, the jury could reasonably assess that when Victim ran by screaming for help, Defendant then knew that a crime was taking place. Because Defendant did nothing and allowed his cousin to load and transport the items in his truck, the jury could reasonably conclude that Defendant supported the crime's commission. *See Carrasco*, 1997-NMSC-047, ¶ 7 (holding that an accessory's intent can be inferred from behavior which informs the principal that the accessory approves of the crime after the crime has been undertaken).

In an effort to minimize the evidence of his involvement, Defendant focuses on the circumstances presented in *Phillips*, a case which Defendant argues stands in contrast to what he believes to be weak evidence of accessory liability in this case.

6

While the facts in this case differ from those in *Phillips*, in both cases the circumstantial evidence for accessory liability shows a community of purpose or partnership in the unlawful undertaking. In *Phillips*, the jury reasonably rejected the defendant's version that he was asleep in the car and a mere passenger based on circumstantial evidence that the defendant changed positions in the car to make room for the stolen property and helped reload the stolen property when it fell from the car. 83 N.M. at 7, 487 P.2d at 917. In the present case, the jury reasonably rejected Defendant's assertion that he was an innocent bystander based on circumstantial evidence that Defendant provided the means of transportation, served as a lookout, positioned his truck to help his cousin load the items, and approved of the crime during its commission when he did nothing to help Victim.

Despite the foregoing, Defendant maintains that he was misled by his cousin and had no idea that his cousin was unlawfully taking Victim's property. According to Defendant, he was driving his cousin home after a night out when his cousin asked him to take a detour to Victim's apartment so that he could collect some money that he was owed. Defendant testified that when his cousin came out of the apartment with a receiver, rather than money, his cousin told him that Victim's son did not have the money owed and allowed him to take the items instead. Consistent with Defendant's

7

story was his cousin's trial testimony that he told Defendant that he was collecting a debt from Victim's son and that Defendant did not know what was going on.

Although Defendant asserts that he was wrongfully convicted for a felony simply because he believed his cousin, it was the jury's prerogative to assess that neither Defendant nor his cousin were credible and thus to disbelieve their version of the events. *See State v. Gonzales*, 1997-NMSC-050, ¶ 18, 124 N.M. 171, 947 P.2d 128 (holding that it is the fact-finder's prerogative to weigh the evidence and to judge the credibility of the witnesses). In this regard, we recognize that Defendant denies that the tailgate to his truck was down, and that he saw Victim as she ran by screaming for help. We recognize also Defendant's view that Victim's testimony was ambiguous and unclear, and that his cousin "made it clear that [Defendant] had no idea what was going on." Again, however, it was the jury's prerogative to disbelieve Defendant's and his cousin's version of the facts. *See Carrasco*, 1997-NMSC-047, ¶ 7 (observing that an accessory's intent may be established by inference from the surrounding facts and circumstances). And given that the cousin's credibility was called into question when his trial testimony was contradicted by Victim's testimony and by the interview he gave to the prosecutor the day before trial, there were ample grounds for the jury to reject the defense's self-serving claims of innocence. *See State v. Huff*, 1998-

8

NMCA-075, ¶ 11, 125 N.M. 254, 960 P.2d 342 (holding that, although the defendant offered conflicting testimony, the jury is entitled to disregard the defendant's version of the facts).

We also reject Defendant's argument that the evidence is not incompatible with any rational theory of innocence. Although the jury conceivably could have believed Defendant's version that he had no idea what was going on and that he was simply and unfortunately present during the crime, its verdict shows that it did not. *See State v. Garcia*, 2005-NMSC-017, ¶¶ 18-20, 138 N.M. 1, 116 P.3d 72 (expressly disavowing the proposition that substantial evidence in support of a conviction must be inconsistent with any reasonable hypothesis of innocence); *State v. Montoya*, 2005-NMCA-078, ¶ 3, 137 N.M. 713, 114 P.3d 393 (holding that the jury's verdict of guilty means that the jury has necessarily found the hypothesis of guilt more reasonable than the hypothesis of innocence).

**EVIDENTIARY RULING**

We next address whether the district court erred in denying Defendant's request to admit his enlistment papers for the Navy's deferred enlistment program. We review the district court's evidentiary ruling pursuant to an abuse of discretion standard and

will not reverse in the absence of a clear abuse. *See State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72.

We begin our analysis by addressing the context in which Defendant sought admission of his deferred enlistment papers. On direct examination, Defendant testified that he was an "E2 in the United States Navy" and that he had been involved with the Navy for almost two years. During the State's subsequent cross-examination of Defendant, the following exchange took place:

State:      And, in fact, at the time that this happened, you had enlisted in the Navy; is that correct, but you were not in the Navy?

Defendant:  I was in hydraulics.

State:      But you were not serving in the Navy?

Defendant:  I was in the Navy, that program.

State:      You had enlisted but you were not serving yet?

Defendant:  I was enlisted, under oath. I hadn't gone to boot camp yet.

State:      And as of right now you are not in the Navy?

Defendant:  I am not. I am in the department program. I'm not active duty.

State:      You are not in the Navy?

Defendant:  I am in the Navy.

State:      You are?  Are you getting paid by the Navy?

Defendant:  I'm not getting paid yet.

State:      You are working, just —

Defendant:  I go to meetings every third Thursday of the month on San Mateo and Montgomery at the Navy recruiting station.

Following this exchange, Defendant sought to introduce his papers for the deferred enlistment program, arguing that the State "opened the door, as far as saying [Defendant] wasn't in the Navy."  In denying Defendant's request, the judge appropriately ruled that the State was entitled on cross-examination to clarify Defendant's naval status as inactive duty, given Defendant's testimony that he was "in the Navy." *See State v. Balderama*, 2004-NMSC-008, ¶ 40, 135 N.M. 329, 88 P.3d 845 (recognizing that the state has the opportunity through cross-examination to clarify any confusion that may result from a witness's direct testimony).  Defendant nonetheless advocates that admission of the documentary evidence of his deferred enlistment was "vital" to his defense.  In this regard, Defendant argues that because he was charged with larceny, a crime of dishonesty, he should have been allowed to introduce the papers pursuant to Rule 11-404(A)(1) NMRA, which permits admission of "evidence of a pertinent trait of character offered by an accused."  This particular argument was not raised below and therefore is not preserved for appeal. *See State*

*v. Martinez*, 2008-NMCA-052, ¶ 10, 143 N.M. 773, 182 P.3d 154 (holding that to preserve an issue for appeal, the appellant must invoke a ruling of the district court on the same grounds argued on appeal), *cert. quashed*, 2008-NMCERT-011, 145 N.M. 532, 202 P.3d 125.  In any event, the State never attacked Defendant's use of his Naval service as indicative of his character for honesty but rather only questioned whether Defendant accurately characterized his Naval status.

That said, we agree with the district court's ruling that the proffered evidence did not have any significant bearing on or add anything to the case.  Introduction of the enlistment papers for the deferred program would have been merely cumulative of Defendant's testimony on cross-examination that he had enlisted but was not yet in active duty, irrespective of any inference that the jury could make regarding whether Defendant was trying to bolster his credibility by his Naval affiliation.  *See* Rule 11-403 NMRA (providing that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by . . . considerations of undue delay, waste of time or needless presentation of cumulative evidence"); *State v. Marquez*, 1998-NMCA-010, ¶ 24, 124 N.M. 409, 951 P.2d 1070 (filed 1997) (recognizing that the trial court's refusal to admit cumulative testimony is not an abuse of discretion).

**CONCLUSION**

Based on the foregoing discussion, we affirm.

**IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**MICHAEL D. BUSTAMANTE, Judge**