This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                          **NO. 30,816**

**BLAKE GREEN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G. Shoobridge, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Adrianne R. Turner, Assistant Appellate Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

Defendant Blake Green appeals his convictions from a verdict finding him guilty of second degree criminal sexual penetration of a minor (CSPM) and fourth degree criminal sexual contact of a minor (CSCM). Defendant raises six issues on appeal: (1) there was insufficient evidence of force or coercion to sustain his convictions; (2) the district court committed fundamental error when it did not provide the jury with N.P.'s testimony during deliberations; (3) the district court improperly coerced the jury by giving a shotgun instruction; (4) it was error to allow the State to amend the criminal information on the day of trial; (5) the district court erred in failing to grant defense counsel's request for a continuance; and (6) trial counsel was ineffective. We reverse Defendant's conviction for CSCM. As a result, we need not reach whether N.P.'s testimony should have been provided to the jury during deliberations. We affirm on the remaining issues.

**BACKGROUND**

Because the parties are familiar with the factual and procedural background and because this is a memorandum opinion, we do not provide detailed background information. We address the facts and procedure as necessary in the context of our analysis. We begin with the issue of whether there was sufficient evidence to sustain Defendant's convictions for CSPM and CSCM and then turn to Defendant's remaining arguments.

**Sufficiency of the Evidence**

Defendant contends that the State failed to present sufficient evidence of force or coercion to support his convictions for CSPM and CSCM. We review sufficiency of the evidence challenges under a substantial evidence standard. *State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656. In applying this standard, we view the evidence in the light most favorable to the verdict, indulging all reasonable inferences and resolving all conflicts in favor of the verdict. *Id.* "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (emphasis, alteration, internal quotation marks, and citation omitted). This Court does not reweigh the evidence nor substitute its judgment for that of the jury concerning the credibility of witnesses. *Id.*

**Defendant's Conviction for CSPM is Supported by Substantial Evidence**

Defendant was charged with one count of CSPM in the second degree (child 13-16), contrary to NMSA 1978, Section 30-9-11(E)(1) (2009), as a result of an incident involving the fourteen-year-old victim, B.P. To convict Defendant of CSPM by force or coercion, the jury was instructed that it had to find each of the following elements beyond a reasonable doubt:

1. [D]efendant caused [B.P.] to engage in sexual intercourse;
2. [B.P.] was at least 13 but less than 18 years old;
3. [D]efendant used physical force against [B.P.];

3

> 4. This happened in New Mexico on or about the 10th day of May, 2009.

In addition, the jury was instructed that sexual intercourse means the penetration of the vagina, the female sex organ, by the penis, the male sex organ, to any extent.

Defendant argues that the State failed to establish sufficient evidence for this CSPM conviction. Specifically, and without explanation, Defendant contends merely that "B.P.'s testimony does not establish the element of physical force." Based on the evidence at trial, we disagree.

B.P. testified that on May 10, 2009, she and her sister were watching movies with their cousin and some other people at the home where Defendant lived. While they were watching movies, Defendant took B.P.'s phone and typed a message on it telling her to go to the back room, that he would be in in a minute to rub her back, and that she could have his bed for the night. B.P. knew Defendant for five or six years and considered him to be like a brother. B.P. also testified that she preferred to sleep in a bed rather than on the couch, so she accepted Defendant's offer. Defendant followed B.P. into the bedroom, shut the door, and started touching and kissing her. B.P. testified that she repeatedly asked Defendant to stop, told him that she had a boyfriend, and that she didn't want to do this. Defendant did not stop but continued touching and kissing her, and he put his penis inside B.P.'s vagina and started to have

sex with her. B.P. tried to push Defendant away, but Defendant forced himself upon her until he came. B.P. testified that she felt like she was being forced and used.

In addition to B.P.'s testimony, the jury heard from a sexual assault nurse examiner (SANE) and a forensic DNA analyst. The SANE testified that she observed a linear vaginal tear on B.P. that was about an inch in length. This type of injury, she said, is very common in sexual assaults. The DNA analyst testified that, to a reasonable degree of certainty, the DNA test revealed that the semen found on B.P.'s cervix belonged to Defendant.

We conclude that sufficient evidence supports the jury's determination that Defendant used force on B.P. We have previously said that there is no specific quantum of force necessary to fulfill the element of "force or coercion." *State v. Perea*, 2008-NMCA-147, ¶¶ 12, 13, 145 N.M. 123, 194 P.3d 738. In *Perea*, we held there was sufficient evidence of force where the defendant ignored the victim's statement that she was not ready and did not want to have sex, and the defendant persisted in having sex with the victim after she asked him to stop. *Id.* Such is the case here where B.P. testified that she asked Defendant to stop, but he persisted in having sex with her, and she had an injury consistent with a sexual assault. Defendant's conviction for CSPM by force or coercion is supported by substantial evidence.

**The Conviction for CSCM is Not Supported by Substantial Evidence**

5

Defendant next argues that the State failed to establish sufficient evidence to support his conviction for CSCM under NMSA 1978, Section 30-9-13(D) (2003). We agree with Defendant.

In order to convict Defendant of CSCM, the jury was instructed that it had to find beyond a reasonable doubt that:

1.  [D]efendant touched or applied force to the breast of [N.P.];
2.  [D]efendant used physical force or physical violence;
3.  [N.P.] was at least 13 but less than 18 years old;
4.  This happened in New Mexico on or about the 10th day of May 2009.

N.P. testified as follows. On the evening of May 10, 2009, she was sitting on the couch with her sister, B.P., her cousin, her cousin's boyfriend, and Defendant. Defendant touched N.P. on her breast, and he "just kissed [her] that's all." N.P. testified that Defendant then put his hand on her pants, and she told him "no." After she told him "no," Defendant "just quit." She then fell asleep where she was seated next to Defendant.

The State contends that the above testimony that Defendant touched N.P. on her breast is sufficient to sustain the CSCM conviction and that "[t]he defense presented no evidence to support a claim that somehow this was an accidental touching or a touching carried out without the use of physical force." The State's position is not in accord with the law that places the burden on the State to prove the elements of the charged crime. UJI 14-5060 NMRA. That burden does not fall to Defendant.

Importantly, the State does not provide any evidence or argument as to how the element of "force or coercion" was met in this instance. In fact, the State's contention is belied by its admission that on the day of the incident, N.P. told the police officer that Defendant "grabbed her right breast and squeezed it" and that "[i]t appears that the prosecutor *thought* he elicited testimony regarding these acts during trial." (Emphasis added.) Clearly, this testimony was not elicited during trial as the State does not point to it anywhere in the record. Accordingly, we conclude that the State failed to meet its burden of establishing all of the elements set forth in the jury instruction. Defendant's conviction for CSCM is reversed. Because we reverse Defendant's conviction for CSCM, we need not reach his argument that the district court erred when it did not provide the jury with a transcript of N.P.'s testimony during jury deliberations.

**The District Court Did Not Coerce the Jury With a Shotgun Instruction**

Defendant argues that the district court unduly coerced the verdicts by telling the jury that a mistrial would be declared if they were unable to reach a unanimous verdict. Defendant contends that the district court's instruction was tantamount to an improper "shotgun" instruction. For the reasons that follow, we hold that the district court did not issue a shotgun instruction to the jury in this case.

After deliberating for two hours, the jury sent out a question asking the court, "What if we cannot agree on both counts?" The district court proposed to reply, "The

7

jury may at any time during its deliberations return a verdict with respect to any count upon which it has agreed. If the jury is unable to agree upon any count, a mistrial would be declared as to that count." Defense counsel did not object to the proposed instruction. Because Defendant did not object below, we review his argument for fundamental error. "Fundamental error is an exception to the rule that parties must preserve issues for appeal." *State v. Cortez*, 2007-NMCA-054, ¶ 5, 141 N.M. 623, 159 P.3d 1108; *see State v. Cunningham*, 2000-NMSC-009, ¶ 8, 128 N.M. 711, 998 P.2d 176 (holding that jury instructions are reviewed for fundamental error when no objection was raised below).

A shotgun instruction directing a deadlocked jury that it must continue deliberating is prohibited in New Mexico. UJI 14-6030 NMRA (setting out a shotgun instruction and stating that "[n]o instruction on this subject shall be given"); *State v. McCarter*, 93 N.M. 708, 711, 604 P.2d 1242, 1245 (1980); *Cortez*, 2007-NMCA-054, ¶ 8. Accordingly, in the event that a jury becomes deadlocked, "[t]he court can inform the jury that it *may* consider further deliberations, but not that it *must* consider further deliberations." *McCarter*, 93 N.M. at 710, 604 P.2d at 1244 (reversing conviction where the district court instructed a deadlocked jury that it must consider further deliberations). A shotgun instruction is coercive in that it could be perceived as a lecture to a holdout juror who does not favor conviction. *Id.* at 710, 604 P.2d at 1244; *see Cortez*, 2007-NMCA-054, ¶ 14 ("Any effort by the court to persuade the jury to

8

reach an agreement after reporting its numerical split may be interpreted by the minority as an implied command to agree with the majority." (alterations, internal quotation marks, and citation omitted)).

Nevertheless, we note that the district court has a duty to respond to a jury's queries regarding legal standards and procedures. *See generally State v. Juan*, 2010-NMSC-041, ¶ 16, 148 N.M. 747, 242 P.3d 314. "[W]hen a jury communicates with the district court during deliberations and expresses its inability to arrive at a verdict, the judge *must* communicate with that jury in some fashion." *State v. Laney*, 2003-NMCA-144, ¶ 52, 134 N.M. 648, 81 P.3d 591 (internal quotation marks and citation omitted). "When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Juan*, 2010-NMSC-041, ¶ 16 (internal quotation marks and citation omitted). Indeed, failure to respond to a jury's question is reversible error where the court's silence effectively coerces the jury's verdict. *See id.* ¶¶ 18-19 (reversing conviction because the district court's refusal to respond to jury's inquiry about "whether a non-verdict or a hung jury was an option" left the jury with the impression that it must continue its deliberations indefinitely (alteration and internal quotation marks omitted)).

In this case, we conclude that the district court did not issue a shotgun instruction. Instead, it was simply meeting its duty to clarify procedural issues for the jury. Unlike *McCarter*, where the court told the jury it must continue deliberating, the

9

district court here informed the jury that it could either return a verdict, or, in the alternative, a mistrial would be declared with respect to the count upon which the jury disagreed. This instruction was consonant with the holdings in *McCarter* and its progeny because the district court's response left the decision to continue deliberating in the hands of the jury.

**It Was Not Error to Allow the Prosecution to Amend the Criminal Information**

Defendant contends that the district court erred in allowing the State to amend the criminal information on the day of trial because he lacked time to prepare a defense. Defendant challenges only the amendment to Count I, which amended the description of the CSPM-II charge to "sexual intercourse through force or coercion" from the original criminal information, which alleged Defendant used his position of authority "to coerce [B.P.] to submit to the sexual act[.]" The State maintains that since the amendment did not charge Defendant with a new offense or add an additional charge, the amendment was proper under Rule 5-204(A) NMRA. For the reasons that follow, we agree with the State.

Due process requires that "[e]very accused . . . be informed of the crime with which he is charged in sufficient detail to enable him to prepare his defense." *State v. Foster*, 87 N.M. 155, 157, 530 P.2d 949, 951 (Ct. App. 1975). The purpose of a criminal information is to "furnish the accused with such a description of the charge against him as will enable him to make a defense . . . and to give the court reasonable

10

information as to the nature and character of the crime charged." *State v. Myers*, 2009-NMSC-016, ¶ 43, 146 N.M. 128, 207 P.3d 1105 (citation omitted). Errors in a criminal information, therefore, are not fatal "unless the accused cannot reasonably anticipate from the [criminal information] what the nature of the proof against him will be." *State v. Marquez*, 1998-NMCA-010, ¶ 20, 124 N.M. 409, 951 P.2d 1070. Criminal pleadings should not be held invalid merely for technical defects, errors, or omissions. Rule 5-204 NMRA, Committee commentary.

Rule 5-204(A) NMRA provides in pertinent part:

> The court may at any time prior to a verdict cause the complaint, indictment or information to be amended in respect to any . . . defect, error, omission or repugnancy if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

Thus, to determine whether the district court properly allowed amendment of a criminal information, we must ask (1) whether an additional or different offense was charged, and (2) if any substantial rights of Defendant were prejudiced. *State v. Dietrich*, 2009-NMCA-031, ¶ 64, 145 N.M. 733, 204 P.3d 748. As with all rules of procedure, we review the district court's interpretation of Rule 5-204 de novo. *State v. Branch*, 2010-NMSC-042, ¶ 19, 148 N.M. 601, 241 P.3d 602, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110; *State v. Stephen F.*, 2006-NMSC-030, ¶ 7, 140 N.M. 24, 139 P.3d 184.

11

An additional or different offense is charged when the amended information raises "an entirely new offense with elements separate and apart from those in the original criminal information." *State v. Roman*, 1998-NMCA-132, ¶ 14, 125 N.M. 688, 964 P.2d 852. In *Roman*, an attempted murder trial, the State amended the criminal information to include a charge of shooting at an occupied dwelling after the defendant testified he heard someone shout from inside the mobile home upon which he had opened fire. *Id.* ¶¶ 2-4. There, we held the amendment violated Rule 5-204 because the defendant did not have notice of the charge against him, given that shooting at an occupied dwelling was not a lesser included offense of any of the other charges. *Roman*, 1998-NMCA-132, ¶ 14.

In contrast, here, Defendant was not charged with an additional or different offense under the amended criminal information. In both the original and the amended criminal information, the State alleged that on May 10, 2009, Defendant committed CSPM-II in violation of Section 30-9-11(E)(1). Because the original criminal information listed the crime charged and the date of alleged incident, Defendant was on notice as to the definition of CSPM-II and the elements he would need to defend against at trial. *See Myers*, 2009-NMSC-016, ¶ 46 (affirming the defendant's conviction where the defendant knew prior to trial what conduct provided the factual basis for the crimes with which he was charged); *see also Dietrich*, 2009-NMCA-031, ¶ 67 (holding that amending an indictment to conform to language in

12

amended statute did not improperly charge the defendant with an additional or different offense); *State v. Vigil*, 85 N.M. 328, 329-30, 512 P.2d 88, 89-90 (Ct. App. 1973) (holding criminal information sufficient where it gave the common name of the crime and identified the statutory section number). Since Defendant had notice of the charge, the State's amendment corrected a technical defect and was not fatal to the pleading.

Defendant contends that the amendment prejudiced him because he "geared his defense toward[] attacking the 'position of authority' element charged in the original criminal information." However, Defendant does not explain how he was prejudiced. "The mere assertion of prejudice, without more, is insufficient to establish prejudicial error warranting reversal of a conviction." *Marquez*, 1998-NMCA-010, ¶ 20 (internal quotation marks and citation omitted). We will not overturn a verdict on appeal based on the alleged "defect, error, omission, repugnancy, imperfection, [or] variance [of the criminal information] . . . unless it is affirmatively shown that the defendant was *in fact* prejudiced in the defendant's defense on the merits." Rule 5-204(D) NMRA (emphasis added). Thus, in order to successfully challenge a defective criminal information under Rule 5-204, a defendant must come forward with a showing of actual prejudice. Defendant has failed to demonstrate prejudice in this case. Absent such a showing, there are no grounds for reversal based on the amended criminal information.

**The District Court's Failure to Grant a Continuance Was Not Error**

Defendant argues on appeal that defense counsel's statements during pretrial motions that she was "not prepared to go forward in this manner" and that she was "providing ineffective assistance of counsel" constituted a motion for continuance. Therefore, Defendant argues, the district court's denial of the motion constituted an abuse of discretion. Defendant's claim of error is not properly raised before this Court.

When preserved, "[t]he grant or denial of a continuance is within the sound discretion of the trial court, and the burden of establishing abuse of discretion rests with the defendant." *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstance of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted). Moreover, Defendant must establish not only an abuse of discretion, but also prejudice. *Id.*

We conclude—and counsel on appeal does not disagree—that Defendant failed to preserve this issue for appeal because defense counsel never requested a ruling from the district court. To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked. Rule 12-216(A) NMRA; *State v.*

14

*Lamure*, 115 N.M. 61, 65, 846 P.2d 1070, 1074 (Ct. App. 1992) (holding that the defendant failed to preserve a claim that he should have been granted more time to prepare in light of amendment to indictment because he did not invoke a ruling from the trial court). The burden is on Defendant to show that the district court ruled on the question. *Batchelor v. Charley*, 74 N.M. 717, 720, 398 P.2d 49, 50 (1965). Defense counsel did not request the district court make a ruling; instead, she merely stated she was "not prepared to go forward in this manner" and that she was "providing ineffective assistance of counsel." Since the issue was not properly preserved, we do not address it on appeal.

**Defendant Did Not Have Ineffective Assistance of Counsel**

Lastly, Defendant contends his counsel was ineffective because she failed to request a jury instruction on the lesser included offense of statutory rape for the CSPM charge and because she failed to request a definition instruction for "force or coercion." In order to establish a prima facie case of ineffective assistance of counsel, Defendant must demonstrate that (1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense. *State v. Herrera*, 2001-NMCA-073, ¶ 36, 131 N.M. 22, 33 P.3d 22.

We conclude that Defendant has not established a prima facie case of ineffective assistance regarding his counsel's failure to request a lesser included

offense instruction, primarily because counsel's course of action could be explained in terms of trial tactics. *See State v. Jensen*, 2005-NMCA-113, ¶¶ 12-16, 138 N.M. 254, 118 P.3d 762 (rejecting a similar claim of ineffective assistance of counsel, in light of the fact that trial counsel might have elected not to request a lesser included instruction as a matter of strategy and the lack of the lesser included offense instruction did not rise to the level of prejudice or unjust result). Counsel may have elected to pursue an all-or-nothing strategy. *See State v. Baca*, 1997-NMSC-059, ¶ 27, 124 N.M. 333, 950 P.2d 776 (holding that a "decision to pursue an . . . all-or-nothing defense is not outside the range of effective representation").

Similarly, we determine that Defendant did not establish that his counsel's failure to request an instruction defining "force or coercion" constituted ineffective assistance. Counsel reasonably could have concluded that the phrase is self-explanatory and has a commonly understood meaning, such that there was no need for further definition. *See State v. Munoz*, 2006-NMSC-005, ¶ 24, 139 N.M. 106, 129 P.3d 142 (holding that a definitional instruction was unnecessary where the phrase in question was self-explanatory and had a common and understandable meaning); *cf. State v. Jimenez*, 89 N.M. 652, 657-58, 556 P.2d 60, 65-66 (Ct. App. 1976) (rejecting a void-for-vagueness challenge to the CSP statute based on alleged ambiguity of the element of force or coercion). Alternatively, counsel might have concluded that the district court was unlikely to give such an instruction. *See Munoz*, 2006-NMSC-005,

16

¶ 24 (observing that the courts are not required to instruct on words or phrases with a common meaning). Accordingly, Defendant has not established a prima facie case of ineffective assistance of counsel.

**CONCLUSION**

For the reasons set forth above, we affirm Defendant's conviction for CSPM and reverse Defendant's conviction for CSCM.

**IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**TIMOTHY L. GARCIA, Judge**