OPINION OF THE COURT
Robert Hettleman, J.
I. Overview
This decision memorializes the order that I made orally on the record on October 28, 2014. The parties to this litigation are directed that they may not share, disclose, provide or otherwise use the medical or mental health records of the child, Kayla S., in any proceeding other than this Family Court Act article 10 case, unless another court or procedure specifically authorizes such use.
II. Procedural Posture
In this case, the Administration for Children’s Services (ACS) filed a petition alleging that the respondent father, Mr. Eddie S., sexually abused the subject child over a period of several years. The trial began before me on September 23, 2014, and it continued on October 23, 2014 and October 28, 2014. The trial is scheduled to resume on November 7, 2014. On October 28th, ACS offered into evidence, as petitioner’s exhibit 2, the medical and mental health records of the subject child from Bronx-Lebanon Hospital, and they were received in evidence without objection. ACS had already provided these records to the parties as pretrial discovery, so all parties have had a copy for some time. The records contain both (1) medical treatment and evaluations of the child from around the time the allegations were disclosed earlier this year; and (2) mental health records relating to a subsequent mental health hospitalization of the child.
*749 In addition to the ongoing Family Court case, Mr. S. has an open criminal case based upon the same allegations, and that case is pretrial. Mr. S. is represented by the Bronx Defenders’ Family Court Division here in the Family Court proceeding, and he is represented by the Bronx Defenders’ Criminal Court Division in the Criminal Court case. The attorney from the criminal side has been here in Family Court for most of the trial dates, although not all. My order on October 28th was that, even though Mr. S.’s Criminal Court attorney may already have access to these records, the records may not be redisclosed or used in any way in the Criminal Court proceeding, or any other proceeding, unless that court or some other procedure authorizes it. That is, it may be that Mr. S. and his attorney may have other legal bases to view or use these records outside of this article 10 case, but they must invoke the proper procedure in order to do so.
III. Discussion
1. Generally, such records are privileged and confidential.
Generally, a patient’s health and mental health records are confidential. (See e.g. Health Insurance Portability and Accountability Act of 1996, Pub L 104-191, 110 US Stat 1936 [HIPAA]; CPLR 4504, 4507; Mental Hygiene Law §§ 33.13, 33.16; 45 CFR part 160, part 164, subparts A, E.) HIPAA privacy regulations protect all “individually identifiable health information” held or transmitted by a covered entity (45 CFR 160.103). HIPAA privacy regulations define “[h]ealth information” as follows:
“any information, including genetic information, whether oral or recorded in any form or medium, that:
“(1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and
“(2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.” (45 CFR 160.103.)
Health providers must protect a person’s individually identifiable health information against deliberate or inadvertent misuse or disclosure. Further, disclosure of protected health information shall take place only upon the explicit written consent of *750 an individual or, if without the written authorization, “to the extent that such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of such law.” (45 CFR 164.512 [a] [1] [emphasis added].) Moreover, even if such records are disclosed, “[a]ny disclosure . . . shall be limited to that information necessary in light of the reason for disclosure. Information so disclosed shall be kept confidential by the party receiving such information and the limitations on disclosure in this section shall apply to such party.” (Mental Hygiene Law § 33.13 [f].)
Plainly, these statutes prohibit disclosure of confidential information without the consent of the patient, an appropriate court order, or the application of some other, specific HIPAA exception. But even further, the laws make clear that even if privileged information is disclosed pursuant to court order or a HIPAA exception, it may only be used for that particular purpose. (Id.)
2. The Article 10 Exception to Confidentiality
One specific exception to HIPAA and the state statutes is built into the Family Court Act for article 10 abuse and neglect proceedings. Family Court Act § 1038 (a) authorizes broad disclosure of privileged and confidential records and documents in an article 10 child abuse and neglect proceeding as follows:
“Each hospital and any other public or private agency having custody of any records, photographs or other evidence relating to abuse or neglect, upon the subpoena of the court, the corporation counsel, county attorney, district attorney, counsel for the child, or one of the parties to the proceeding, shall be required to send such records, photographs or evidence to the court for use in any proceeding relating to abuse or neglect under this article. . . . The court shall establish procedures for the receipt and safeguarding of such records.” (See also Family Ct Act § 1046 [making such records admissible at trial].)
The purpose of these broad disclosure provisions is to ensure that the Family Court in a child abuse and neglect proceeding has a comprehensive and complete record to guard against erroneous findings and to fulfill the purpose and mandate of the court to:
“help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being. It is designed to provide a due *751 process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met.” (Family Ct Act § 1011.)
This liberal use of such records reflects a legislative policy that full and complete due process rights must be accorded before a family may be separated by court order. It also evinces the legislature’s recognition that broad disclosure is a significant safeguard against erroneous determinations in such sensitive matters and helps to ensure that determinations affecting a child’s welfare will be based on the most complete record possible. (Matter of Tricia K., 160 Misc 2d 935, 936 [Fam Ct, Kings County 1994], citing Matter of Marie B., 62 NY2d 352 [1984].)
Accordingly, where a parent or child’s mental health or medical records are material and necessary to the allegations in an article 10 proceeding, the Family Court Act expressly and specifically overrides the statutory privileges normally accorded to doctor-patient relationships. (Family Ct Act §§ 1038 [a]; 1046 [a] [vii]; see also Matter of B. Children, 23 Misc 3d 1119[A], 2009 NY Slip Op 50841 [U] [Fam Ct, Kings County 2009] [providing a thorough review of the applicability and propriety of the Family Court Act’s ability to override state and federal privileges].) A Family Court judge’s order or subpoena permits the court and/or the parties to obtain and use such records in an investigation or trial, subject to redaction or protective order.
3. The Family Court’s authority does not extend beyond Family Court proceedings.
It is clear, however, that the authority to override these well-established privileges comes expressly from the provisions of the Family Court Act. It is not from a voluntary waiver of the privilege by the patient—often a child who cannot consent or an adult respondent who may not consent—and therefore cannot, and should not, serve as a wholesale waiver of privacy. In other words, although an article 10 proceeding may require the disclosure and use of such confidential materials, the fact that they are obtained for the Family Court case does not mean that from that moment on, people other than the patient have carte blanche to use confidential materials as they please. (45 CFR 164.512 [a] [1]; Mental Hygiene Law § 33.13 [f].)
The provisions of HIPAA are clear: even if such records can be disclosed pursuant to one exception of federal or state rules, further disclosure, redisclosure, or unauthorized use is prohibited. HIPAA regulations specifically call for the issuance of a *752 “qualified protective order” to “[p]rohibit[ ] the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested.” (45 CFR 164.512 [e] [1] [v] [A].) Likewise, the CPLR authorizes the use of protective orders, and courts routinely use them to manage discovery and information in order to balance the rights of the parties, privacy and safety issues, and the orderly administration of cases. (CPLR 3103 [a] [entitled “Prevention of abuse”: court may fashion protective orders “to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts”].) In Matter of B. Children, the Family Court barred the parties in a child protective proceeding “from using or disclosing the subject child’s hospital records for any purpose other than the instant litigation” and required the parties to return the records to the court at the end of the proceeding. (23 Misc 3d 1119[A], 2009 NY Slip Op 50841 [U], *10 [Fam Ct, Kings County 2009].) The court did so “in an effort to ensure that the [subject child’s post-incident hospital] records are not used for any purpose other than this proceeding” after a comprehensive review of the privileges, statutes, and competing interests at stake. (Id.; see also Matter of W, Fam Ct, Bronx County, July 21, 2014, Sherman, J., docket No. NA-XXXX/13 [currently on appeal].)
Returning to the instant matter, the parties do not dispute the relevance and admissibility of the subject child’s medical and mental health records in the article 10 neglect proceeding before me. However, the respondent’s attorney—the Bronx Defender assigned to the article 10 case—opposes any limitation on the redisclosure or use of the records in any other proceedings. As noted, the respondent also has a criminal case pending against him based upon the same allegations, so the opposition to a protective order plainly relates to the potential use of those records in Criminal Court.
Importantly, the privacy interest in these records belongs to the child, not to the respondent. The child did not consent to production or use of these records, and the Family Court Act’s authority to use them in the article 10 case does not give the respondent, his attorney, or anyone else the right to use them in other proceedings. Indeed, even if the attorneys in this case already possess the records and knowledge of the information contained therein, there has been no consent or legal permission to make use of that information in any other context or *753 proceeding. The Family Court Act’s provisions exist to protect children and provide respondents with a full and fair article 10 proceeding, not to serve as a windfall to litigants who might stand to benefit in other arenas from the possession of confidential and intimate materials.
Unlike the Family Court Act, the Penal Law and Criminal Procedure Law contain no express or implicit provisions that override the privileges defined in the CPLR and HIPAA. Rather, case law makes clear that judges in criminal cases have the power to order the production, discovery, or disclosure of confidential records only in individual cases and only under certain circumstances. A party seeking confidential records in a criminal case must make a specific showing to a court in order to overcome the privilege and the sound public policy considerations that underlie statutory privileges. (See e.g. People v Tissois, 72 NY2d 75 [1988] [in a rape case, defense failed to provide any valid reason to overcome CPLR’s confidentiality of mental health records]; People v Arredondo, 226 AD2d 322, 322 [1st Dept 1996] [trial court properly denied defendant’s request for disclosure of the complainant’s psychological records “since he failed to sustain his burden of showing a factual predicate that the records could establish the unreliability of the victim or provide a motive to falsify” (citations omitted)].) The proponent of obtaining the records must show their materiality and relevance, and the law prohibits discovery of such records when they are sought in a mere fishing expedition searching for general impeachment of a witness. (See People v Gissendanner, 48 NY2d 543, 547 [1979]; Tissois, 72 NY2d at 78-79; Arredondo, 226 AD2d at 322.) And even if such a showing can be made, the proper procedure is to produce the records to the court in camera so that the judge can decide, after balancing the privacy interests against the rights of the defendant, whether there are any material and appropriate portions of the records to be disclosed, if any. (Arredondo, 226 AD2d at 322; People v Gutkaiss, 206 AD2d 628 [3d Dept 1994].)
Returning again to the instant matter, it may well be that the respondent can make a proper showing in Criminal Court in order to obtain and use all or part of these records. But the authority to do so must come from the Criminal Court after an assessment of the relevant law and standards, not through the respondent’s fortuitous possession of the records due to the statutory provisions of the Family Court Act.
*754 IV Conclusion
For the reasons stated above, this court orders that the parties in this article 10 case may not share, disclose, provide or otherwise use the medical or mental health records of the child, Kayla S., in any proceeding other than this article 10 case, unless another court or procedure specifically authorizes such use.