OPINION OF THE COURT
Margaret L. Clancy, J.
Introduction
Defendant is indicted for allegedly raping and sexually abusing his 11-year-old stepdaughter on October 13, 2013. Defendant is represented by an attorney from The Bronx Defenders’ criminal defense practice in this criminal proceeding. Defendant is also a respondent in an article 10 abuse and neglect proceeding in Bronx County Family Court. The Administration for Children’s Services (ACS) initiated those proceedings based on the same allegations. Separate counsel from The Bronx Defenders’ family defense practice represent him in that matter.
At the request of ACS, and for the purpose of providing expert testimony in the Family Court proceeding, Dr. Eileen Treacy, a psychologist, video-recorded two interviews with the child complainant, and prepared a written Sexual Abuse Assessment — Summary Report (validator’s report). Pursuant to Family Court rules, Dr. Treacy provided the report and the recorded interviews to ACS. As obligated under the provisions of the Family Court Act, ACS provided copies of these discovery materials to defendant’s Family Court attorney for exclusive use in the abuse and neglect proceeding. Subsequently, defendant’s Family Court attorney, without seeking court permission, unilaterally provided the report to defendant’s criminal attorney. When the presiding Family Court judge learned of this, she ordered the return of the report and issued a protective order prohibiting, inter alia, disclosure of the validator’s records *793 to defendant’s criminal defense attorney. (Matter of Wendy P. & Valeria S., Fam Ct, Bronx County, July 21, 2014, Sherman, J., docket No. NA-27180-13.) By notice of motion, defendant now seeks a judicial subpoena duces tecum for an in camera inspection of the validator’s report and the recorded interviews of the complainant. ACS opposes this motion; the People take no position.
The court is granting defendant’s motion for a subpoena. The court does so based not on information obtained in violation of the Family Court Act, but based on Dr. Treacy having now testified publicly in the article 10 proceeding in Family Court.
The Issues Presented
This request for a judicial subpoena presents a number of issues that the court must resolve: first, whether service of the motion on ACS was appropriate and legal service; second, whether defendant has made the requisite legal showing to support the issuance of this subpoena; third, whether the criminal attorney’s possession of the validator’s report prior to the issuance of the Family Court judge’s protective order violated the Family Court Act; fourth, if it did, whether such violation should bar the issuance of the subpoena; and fifth, whether the public testimony in Family Court provides an independent legal basis for issuance of the subpoena.
Family Court Proceeding Background
The facts concerning the proceedings in Bronx Family Court are largely undisputed. On October 21, 2013, ACS initiated an abuse and neglect proceeding against defendant in Bronx Family Court pursuant to Family Court Act article 10, based on the 11-year-old complainant’s allegations that she was sexually abused by defendant, her stepfather.[1] Defendant was appointed counsel from The Bronx Defenders, and he has been represented continuously in the Family Court case by several attorneys from its family defense practice. Three days after ACS commenced the article 10 civil proceedings, on October 24, 2013, defendant was arrested for rape in the first degree based on the same allegations. The Bronx Defenders was appointed to represent defendant in the criminal proceeding and a differ *794 ent attorney, from its criminal defense practice, has represented him in the criminal case ever since.[2] Defendant was subsequently indicted.
In preparation for the article 10 proceeding, ACS retained the services of Dr. Eileen Treacy for the purpose of conducting an assessment of the complainant and her allegations of sexual abuse.[3] Dr. Treacy recorded two interviews with the complainant. She also prepared a written report, which she provided to ACS. ACS informed defendant’s Family Court attorney of its intention to call Dr. Treacy as an expert witness. Pursuant to its Family Court discovery obligations, ACS gave that attorney copies of Dr. Treacy’s report as well as the complainant’s recorded interviews.
Prior to June 24, 2014, without seeking permission from the Family Court judge, Family Court counsel gave criminal defense counsel a copy of Dr. Treacy’s report. On June 24, 2014, criminal defense counsel attempted to enter an appearance in the Family Court proceeding. The Honorable Carol Sherman, the presiding judge in the article 10 proceeding, denied his application to appear. The judge also asked whether criminal counsel was in possession of any of the discovery documents from the Family Court matter. Defense counsel admitted he had a copy of Dr. Treacy’s report. Judge Sherman immediately ordered him to return all Family Court discovery documents to the court. Judge Sherman subsequently issued a qualified protective order, dated July 21, 2014, in which she prohibited the disclosure of any of the Family Court records to any person other than those directly involved in the representation of the parties in the Family Court proceeding and painstakingly *795 outlined why such disclosure violated state and federal law in that matter. (Matter of Wendy P., docket No. NA-27180-13, slip op at 15.) The language of the order authorized defendant, as the respondent in the article 10 proceeding, to have “access” to the discovery for the purposes of that proceeding, but prohibited his disclosure of any of the information to anyone, including his criminal defense attorney. (Matter of Wendy P., docket No. NA-27180-13, slip op at 14-16.)
The Bronx Defenders filed a notice of appeal in the Appellate Division, First Department, and sought a stay of Judge Sherman’s protective order. On August 13, 2014, a judge of the Appellate Division granted an interim stay only to the extent that the order could be read as “prohibiting criminal defense counsel from consulting with Family Court counsel.” (Matter of Wendy P. & Valeria S., App Div, 1st Dept, Aug. 13, 2014, index No. NA-27180-81/13.) In all other respects, the Appellate Division Justice denied the stay pending further submissions and a determination by the full bench. Following that decision, criminal defense counsel again sought to make an appearance in the Family Court matter so that he could have access to the Family Court records.[4] Judge Sherman, however, ruled that the interim stay allowed only consultation and not the disclosure of the records.
On September 17, 2014, defense counsel returned to the First Department seeking clarification of the interim stay. According to ACS, defense counsel was informed by First Department staff that the interim stay did not allow counsel to review the Family Court discovery materials. Defendant does not dispute this assertion. In a decision dated October 2, 2014, the First Department continued the interim relief that was granted by its August 13, 2014 order, i.e., permitting consultation between counsel, but otherwise denying a stay of Judge Sherman’s order. (Matter of Wendy P., 2014 NY Slip Op 85220 [U] [1st Dept 2014].) Subsequently, on December 11, 2014, defendant filed the instant motion seeking a subpoena for the validator’s records. During the pendency of this motion, The Bronx Defenders did not perfect its appeal. Ultimately, on April 2, 2015, the Bronx Defenders moved to withdraw its appeal. The motion was granted on April 28, 2015. (Matter of Wendy P., 2015 NY Slip Op 71473[U] [1st Dept 2015].)
*796 Supreme Court Criminal Proceedings
During the pretrial proceedings in this case, the People provided discovery to defendant pursuant to their obligations under CPL article 240. That discovery included the complainant’s medical records, as well as ACS records in their own custody related to its investigation of the alleged sexual abuse. Although these records include some of the same documents produced during the article 10 proceeding, the actual records provided to defense counsel were obtained independently by the People pursuant to their discovery obligations in the criminal matter; they are not copies made from the Family Court’s records. The People also provided discovery in the form of a joint interview report of the complainant.[5] It should be noted that the People are entitled to obtain ACS records pursuant to Social Services Law § 422 (4) (A) (1). They routinely do so and provide these records to defense counsel as Rosario material. There is, however, no statute that allows the People to obtain Dr. Treacy’s report or her recorded interviews of the complainant, and they do not have possession of those materials.
Motion for a Judicial Subpoena
Because they are not in the People’s possession, the validator’s report and recorded interviews are not Rosario material and are not subject to discovery under CPL article 240. (People v Tissois, 72 NY2d 75, 78 [1988].) Likewise, because the People do not possess the records, they cannot know if the records contain any potential exculpatory or impeachment material pursuant to the Brady and Giglio line of cases. (See generally Brady v Maryland, 373 US 83 [1963]; Giglio v United States, 405 US 150 [1972].) Moreover, although defense counsel possessed a copy of the validator’s report before the Family Court judge ordered him to return it, pursuant to the protective order he cannot now obtain the materials from the Family Court attorney. Defendant has, therefore, asked this court to sign a judicial subpoena ordering the production of these records.
Pursuant to CPL 610.20 (3) and CPLR 2307, a defendant may move for a judicial subpoena duces tecum seeking docu *797 ments and other materials from any government agency, with at least one day’s notice to the agency and the People.[6] Defendant did so on December 11, 2014.[7]
Validity of Service on ACS
As a preliminary matter, the court rejects ACS’s position that ACS is not the proper agency to be served with this subpoena. ACS argues that the validator’s report and recorded interviews do not belong to ACS, were not created by ACS, and are, in actuality, Family Court and not ACS records. Although the records are subject to Family Court regulation, as Judge Sherman noted in her protective order, it was ACS, as the presenting agency, who referred the complainant for a validation interview. It is without question that the validator’s report and video interviews “were created by an anticipated expert witness as part of . . . ACS’s trial preparation in” the Family Court proceeding pursuant to section 1038 of the Family Court Act. (Matter of Wendy P. & Valeria S., Fam Ct, Bronx County, July 21, 2014, Sherman, J., docket No. NA-27180-13, slip op at 7-8.) Moreover, the applicable Family Court rule requires that a duplicate copy of the video interview remain in the custody of the attorney for the party who requested the interview. (Uniform Rules for Fam Ct [22 NYCRR] § 205.86 [c] [1].) Accordingly, the court holds that because the validator’s report and video interviews are in the possession of ACS for use in the article 10 proceeding, they are now part of ACS’s records. Therefore, defendant has validly served the notice of motion on ACS and the proposed judicial subpoena is appropriately addressed to ACS.
Requirements for the Issuance of a Judicial Subpoena for Confidential Records
A subpoena duces tecum may not be used for purposes of discovery or to determine the existence of evidence that may turn out to be relevant and exculpatory. (People v Gissendanner, 48 NY2d 543, 551 [1979].) To obtain a subpoena, defend *798 ant must make a showing under Gissendanner that it is reasonably likely that the records he seeks contain relevant and exculpatory material that bears upon “ ‘the unreliability of either the criminal charge or of a witness upon whose testimony it depends.’ ” (People v Kozlowski, 11 NY3d 223, 242 [2008], quoting Gissendanner, 48 NY2d at 550.) While the justification for issuing a subpoena cannot be based on mere speculation, a defendant need not show that the materials sought actually contain relevant and exculpatory evidence. The showing requires only that these materials are reasonably likely to contain such evidence. (Gissendanner, 48 NY2d at 550.) Access to any information that is protected by confidentiality laws, with nothing more than “a bare allegation that the inspection is sought as fodder for an untracked attack on credibility would render the principle of confidentiality meaningless for all practical purposes.” (Gissendanner, 48 NY2d at 549-550.)
Defense counsel acknowledges that he received a copy and read the validator’s report after ACS provided it to his Family Court counterpart. Counsel represents that the validator’s report contains statements from the complainant that he believes are inconsistent with statements that she made during the course of the criminal investigation, statements that were provided to defense counsel as discovery in this criminal case. Based on his reading of the report, defense counsel asserts there are significant inconsistencies in the report relating to the time line of events, the actual conduct defendant allegedly engaged in, and “other circumstances surrounding the alleged sexual abuse.” Since the complainant is the only witness with personal knowledge of the alleged criminal conduct, defendant argues that these inconsistent statements are material to his defense and may be used to impeach the complainant during cross-examination.
Certainly, defense counsel’s representations concerning the validator’s report demonstrate that this is no mere “fishing expedition” for impeachment material (see Gissendanner, 48 NY2d at 547). Defendant has articulated the requisite factual predicate to show that it is reasonably likely that the validator’s report and recorded interviews contain relevant and material evidence bearing on the “unreliability of . . . the . . . witness upon whose testimony [the criminal charge] depends.” (Gissendanner, 48 NY2d at 550.)
This court is concerned, however, with the manner in which defense counsel initially obtained that information.
*799 Defense Counsel’s Prior Possession of the Validator’s Report
It is not disputed that defense counsel’s possession and review of the validator’s report occurred before Judge Sherman ordered its return and issued her protective order. It appears, however, that it is precisely because criminal defense counsel possessed Family Court discovery documents that Judge Sherman found it necessary both to order counsel to return his copy of the report and to issue the protective order.
In providing the validator’s report to his criminal court colleague, defendant’s Family Court attorney violated the strict confidentiality requirements of the Family Court Act as well as the rules for discovery of documents in article 10 proceedings. Although a Family Court judge has the discretion to permit the inspection of any records, all papers and records of any Family Court proceeding, in general, are confidential and are not “open to indiscriminate public inspection.” (Family Ct Act § 166.) Defendants and their Family Court attorneys are allowed access only to “the pleadings, legal papers formally filed in a proceeding, findings, decisions and orders and, . . . transcribed minutes of any hearing held” in any Family Court proceeding. (22 NYCRR 205.5 [a].) Where an order of protection has been issued in a proceeding pursuant to articles 4, 5, 6 and 8 of the Family Court Act, a criminal defense attorney may have access to these documents in the related criminal proceeding. (22 NYCRR 205.5 [d] [2].) However, article 10 proceedings are noticeably absent from this provision. Even where there is a pending proceeding in another court, such as this one, which involves the parties from the article 10 proceeding, these limited documents will be available to the court and “may not be redisclosed except as necessary to the pending proceeding.” (22 NYCRR 205.5 [e].) It is clear that criminal defense counsel does not have access to article 10 documents pursuant to Family Court rules. It is equally clear that these documents retain their confidentiality when provided to another court in a concurrent proceeding. Access to these limited documents does not include access to the materials defendant seeks in this matter.
While the Family Court Act provides broad discovery to the parties in article 10 proceedings, the plain language of the statute limits the use of that discovery to that proceeding alone. (Family Ct Act § 1038 [a].) This is consistent with the overriding concern that the courts protect the welfare of children while guaranteeing due process to all parties in abuse and neglect *800 proceedings. (Family Ct Act § 1011.) In enacting article 10 of the Family Court Act, the legislature determined that a court should have all possible information available to it to “guard against erroneous findings and to fulfill the . . . mandate of the court to . . . ‘help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being.’ ” (Matter of Kayla S. [Eddie S.J, 46 Misc 3d 747, 750-751 [Fam Ct, Bronx County 2014], quoting Family Ct Act § 1011.) The Family Court Act mandates the production of various records “for use in any proceeding relating to abuse or neglect under . . . article [10].” (Family Ct Act § 1038 [a].) The Act specifically abrogates the independent statutory privileges that would otherwise attach to medical or mental health records that the court may require to be produced. (Family Ct Act § 1038 [a].) The party whose privacy is otherwise protected by the confidentiality laws cannot assert that privilege in the article 10 proceeding. Nor has that party waived any confidentiality. (See Kayla S., 46 Misc 3d at 752.)
Documents that are produced and provided to the parties for use in an article 10 proceeding do not become public records and they do not lose the protections of their respective confidentiality laws simply because they were produced for use in that proceeding. (Kayla S., 46 Misc 3d at 751.) In issuing a protective order in this case, it is apparent that Judge Sherman did nothing more than make explicit what should be understood from a combined reading of the Family Court Act and Uniform Rules, as well as the statutes related to privileged records — that the discovery produced to the parties in Family Court is restricted to use in the Family Court proceeding and cannot be freely copied or shared with others, including criminal defense counsel.[8]
The court is aware that a number of Bronx County Family Court judges have become concerned that some Family Court *801 counsel are not complying with the confidentiality provisions of the Family Court Act. This has resulted in the Family Court judges issuing an increasing number of protective orders for the discovery produced in article 10 proceedings, explicitly limiting the redisclosure or use of the discovery documents.[9] The court is also aware that the Family Court judges are not uniform in their issuance of protective orders or the language and restrictions they place on the sharing of documents and the information contained in those documents.[10]
In any event, this court finds that, even in the absence of a protective order, the Family Court Act and rules restrict discovery materials obtained in article 10 proceedings to use exclusively in those proceedings. (Family Ct Act §§ 1038 [a]; 166; 22 NYCRR 205.5.) It follows that those records cannot then be disclosed without court authorization. If records provided in discovery in those proceedings can be copied and provided to defense counsel or any other person without a court’s approval, then the confidentiality rules are meaningless.
The court recognizes that the validator’s records at issue in this matter are different from other records routinely produced in Family Court for abuse and neglect proceedings. While independent statutory privileges attach to ACS records, school records, medical records and mental health records, [11] the validator’s report and recorded interviews of the child are created specifically at the request of ACS for purposes of introducing *802 expert testimony at the fact-finding hearing.[12] They are created for the Family Court litigation and are interviews of the complainant related to the same allegations of sexual abuse for which defendant is indicted. Nonetheless, the records are governed by the confidentiality provisions of the Family Court Act and its rules, which only allow for access by the court, the child’s attorney, and the parties. (Family Ct Act § 1038 [c].) The video interview itself is confidential pursuant to the Uniform Rules for the Family Court, which severely restricts how it is stored, who may access it, and who may possess it. (22 NYCRR 205.86 [c].) The rules make clear that a party’s failure to comply with the rules subjects that individual to contempt sanctions. (22 NYCRR 205.86 [d].)
Defendant concedes that the validator’s records are confidential records and subject to restricted viewing and disclosure. Defendant instead asserts he is entitled to the records based on sweeping interpretations of constitutional rights to counsel, free speech, and due process to justify the Family Court attorney’s disclosure of the validator’s report to criminal defense counsel. The court notes that many of defendant’s arguments concern the lawfulness of the restrictions in Judge Sherman’s protective order and her refusal to allow defense counsel’s appearance in the article 10 proceeding. The court will not address these arguments. These arguments were best addressed to the appellate court, an avenue that defendant, for his own strategic reasons, has chosen not to pursue. However, the court is not persuaded by defendant’s arguments that there was a valid basis for Family Court counsel to give a copy of the validator’s report to criminal defense counsel without court authorization.
Defendant’s primary argument is that, at the time criminal defense counsel possessed the validator’s report, he was representing defendant in the Family Court matter. He also argues that he was “participating in the representation” of defendant in the article 10 proceeding. That is just not the case. By whatever definition this court uses, criminal defense counsel was not representing or actively participating in the representation of defendant in that matter. Whatever criminal defense counsel’s role may have been regarding the article 10 proceed *803 ing when he possessed the report, that role was known only to himself, defendant, and defendant’s Family Court attorney. It was certainly not known to the Family Court judge. Criminal defense counsel had not filed a notice of appearance in that court. Criminal defense counsel had not notified the court that he wished to participate in representing defendant in the Family Court proceeding. Nor did he notify the judge that he was acting in a “consultative” role in the Family Court case. No person, attorney or otherwise, is entitled to copies of confidential Family Court documents, without court authorization, by merely deciding he is “participating” in the Family Court matter in some capacity.
It is without question that criminal defense counsel had every right to confer and consult with Family Court counsel and his own client regarding the Family Court case. That alone did not give him the right to any of the Family Court records. In fact, that was Judge Sherman’s ruling in her protective order — a ruling left undisturbed by the Appellate Division’s interim stay. It is for the Family Court judge to appoint counsel and to permit others to appear on a defendant’s behalf in any matter before that judge. Given criminal counsel’s dual roles as “consultant” on the Family Court matter and defense attorney on the criminal case, the judge was entitled to approve counsel’s involvement so she could order the erection of a firewall to ensure protection of the confidential discovery documents in the article 10 proceeding, as well as compliance with her protective order. In fact, in recently granting defendant’s application to retain criminal counsel pro bono for the purpose of cross-examining Dr. Treacy about her expert conclusions, Judge Sherman still denied his appearance as an attorney from The Bronx Defenders’ criminal defense practice. This was not mere semantics. In her ruling, Judge Sherman directed that Bronx Defenders erect a “firewall” between criminal counsel and his now “retained” pro bono status, and precluded his own use of the Family Court documents in this criminal matter, even though he will now have legal access to them in the article 10 proceeding.[13]
*804 However persistently defense counsel argues that he possessed the validator’s report in his capacity as defendant’s counsel in the article 10 proceeding, the fact is that he was not. He was appointed by the criminal court to represent defendant in the criminal matter and was not representing defendant in the Family Court matter. As such, defense counsel was not entitled to a copy of the report.
Defendant also argues that The Bronx Defenders as an institutional provider was appointed to represent him, not individual attorneys and, therefore, the Family Court Act cannot be interpreted to prohibit the sharing of discovery documents between attorneys from the same law firm. Defendant compares The Bronx Defenders to the “numerous” law firms that have created multidisciplinary practice groups, while at the same time ignoring the fact that these law firms are required to create “firewalls” to prevent the sharing of information between practice groups or attorneys when necessitated either by conflict or confidentiality issues. The Bronx Defenders’ argument that it is one organization that provides “integrated multi-disciplinary representation” is not determinative and does not entitle it to engage in the blanket sharing of discovery documents among its attorneys in its different practices.[14] The attorneys in Family Court are obligated to abide by the confidentiality provisions of the Family Court Act and rules, even in the absence of a protective order. Moreover, practitioners in Bronx County Family Court are certainly aware that judges presiding over article 10 proceedings are increasingly issuing protective orders for the discovery documents produced in those proceedings. While those judges may vary in the degree of the restrictiveness of their orders, the attorneys from The Bronx Defenders family defense practice (or any other *805 practitioner in that court) have no basis to believe that they are permitted to share confidential discovery documents they receive for use solely in the article 10 proceeding, under the very restrictive statutes and rules governing those proceedings, without court authorization. As such, The Bronx Defenders is obligated to erect a firewall at the outset to ensure compliance with the confidentiality rules and any future protective order that a Family Court judge may issue.
Defendant also argues that the confidentiality provisions of the Family Court Act cannot be interpreted as prohibiting defendant’s Family Court counsel from sharing relevant documents with his criminal defense counsel as that violates defendant’s constitutional right to counsel. Significantly, the appellate court ruled otherwise when it decided defendant’s request for interim relief. Moreover, the right to counsel in Family Court is statutory, not constitutional. (Family Ct Act §262 [a].)
Defendant’s attempt to limit his constitutional arguments to cases where The Bronx Defenders represents a defendant both in Family Court and in concurrent criminal court or Supreme Court proceedings is unpersuasive. The court disagrees that such an argument can be limited and rejects defendant’s right to counsel argument. These broad constitutional arguments regarding the right to counsel and the right to share documents, would necessarily apply to any criminal defendant with parallel proceedings in each court, regardless of his representation in each court. And in practice, The Bronx Defenders has not acted in accordance with this purported self-limitation. This court recently presided over a case where an 18-B attorney received Family Court discovery documents from an attorney in The Bronx Defenders’ family defense practice, without any authorization by the Family Court or this court. In other cases, this court has learned that attorneys from The Bronx Defenders’ family defense practice have given ACS records and medical and mental health records to appointed and private attorneys, in complete disregard of the confidentiality provisions of the Social Services Law, the Family Court Act, and the privileges that HIPPA and the CPLR attach to medical and mental health records.
Defendant also asserts that his Sixth Amendment right to the compulsory process trumps the confidentiality provisions of the Family Court Act, as well as any statutory privileges that may apply to documents. Defendant notes that the validator’s *806 report contains statements from the only eyewitness to the alleged crime and that, if the People possessed these statements, they would be obligated to turn them over as Rosario, Brady, and/or Giglio material. As such, defendant argues that the Sixth Amendment right to the compulsory process requires that he be privy to them. Defendant’s assertion is wrong. Although courts have long recognized the importance of the rights guaranteed by the Sixth Amendment, they have sought to balance the important policy interests in privileged or confidential records with those rights.
The right to the production of documents does not automatically supercede statutory privileges and privacy protections (Pennsylvania v Ritchie, 480 US 39, 57-58 [1987]). The privilege afforded such records as well as any statutory confidentiality provisions can only be overcome by defendant making the appropriate showing in Supreme Court. (Ritchie, 480 US at 58 and n 15 [citation omitted].) It is only after defendant makes the appropriate showing that the court in a criminal proceeding will determine whether the records contain any material that warrants disclosure.
In sum, because the Family Court attorney violated the Family Court Act’s confidentiality provisions by providing a copy of the validator’s report to criminal defense counsel without authorization, the court rejects defendant’s arguments that criminal defense counsel lawfully possessed the validator’s report.
Defense Counsel’s Possession of Records in Violation of the Family Court Act and its Effect on the Issuance of the Subpoena
This court will not issue a judicial subpoena where the sole support for the request comes from records that defense counsel possessed in violation of the Family Court Act and its confidentiality provisions. To do so is to invite a disregard of the statutes and rules that the legislature has carefully enacted to enable the Family Court to responsibly perform its difficult mandate in the challenging, emotional, and highly sensitive arena of child and family protective proceedings. Public policy demands nothing less.
This court is well aware that the only evidence supporting the criminal charges in this matter is, in fact, the testimony of the child witness. There is no medical or forensic evidence that corroborates her testimony. The jury will be required to assess *807 the credibility and reliability of this one critical witness to determine if her testimony proves the crimes charged beyond a reasonable doubt. The court understands the particular importance to defendant of any material that may affect the credibility and reliability of this witness.
Nonetheless, it is critical that counsel in both courts abide by the strictures of the Family Court Act and its rules, as well as the rules that govern discovery and subpoenas in criminal cases. Although defense counsel has properly sought from this court a judicial subpoena for the records he seeks by way of notice and accompanying affirmation, his support comes from information he was not entitled to possess, because of the violation of the Family Court Act.[15]
The Court’s Basis for the Issuance of the Subpoena
During the pendency of this motion, the Family Court has continued to hold its fact-finding hearing. The parties have informed the court that Dr. Treacy testified on direct examination and is to continue cross-examination when the matter is next scheduled in that court. Her report and the recordings of the child’s interviews have been admitted in evidence as exhibits. The fact-finding hearing is a public proceeding, and the substance of Dr. Treacy’s examination of the child and her findings, if not the report and recordings themselves, have now been made public. It is on this basis that the court now grants the application for the issuance of a subpoena for Dr. Treacy’s report and recordings for an in camera inspection of those records.
The issues raised by this motion will continue to be litigated in this, the Child Abuse/Sex Crimes Part, and elsewhere in the Supreme and Criminal Courts. In the first instance, of course, it is for the Family Court judges to determine how best to ensure adherence to the legislated requirements of confidentiality for the records produced in that court, as well as compliance with their own protective orders.
*808 As stated earlier, this court has serious concerns that there are cases where defense counsel, both appointed and privately-retained, have been in possession of confidential Family Court records, including ACS investigation records and complainants’ medical and mental health records. The court has learned that attorneys from The Bronx Defenders’ family defense practice, and in one instance, a Family Court 18-B attorney, have unilaterally provided these records to criminal defense counsel without those attorneys seeking judicial authority to disclose the records. The documents were provided without regard to any of the statutory privileges that attach to those records, and in either ignorance or defiance of the penalties that attach to such willful disclosure.[16] Zealous advocacy need not and should not involve an abandonment of an attorney’s ethical obligations to follow the law, whether that attorney agrees with the law or not. If The Bronx Defenders or any other Family Court practitioner believes Family Court judges are misinterpreting the law, or unconstitutionally restricting its clients’ rights, as counsel argues in this case, then its recourse is to seek review from the appellate courts or to seek changes in the confidentiality laws from the legislature.
Attorneys practicing before this court are on notice that in any case before it where the defendant is a respondent in a concurrent article 10 Family Court proceeding, the court will be making on-the-record inquiries. The court expects to be informed as to the status of any article 10 proceeding, whether the Family Court judge has issued any protective orders in that proceeding, and whether defense counsel is in possession of any records that were produced as discovery in that proceeding and who provided them. If this court determines that a defense attorney is in possession of confidential Family Court records that were obtained without judicial authorization, this court will require the return of the documents, and prohibit their use in the criminal proceeding. Defense counsel are obli *809 gated to seek those confidential records, if there is a basis for doing so, by making the appropriate application before this court.
Conclusion
While the court will not issue a judicial subpoena based on information possessed in violation of the Family Court Act, the court will grant defendant’s application based on the parties’ representations that Dr. Treacy testified in open court in a public fact-finding hearing where the substance of her examination of the child and her findings have now been made public.

. Defendant is named the respondent in the article 10 proceeding. For purposes of this decision, and for the sake of clarity, the court will only refer to Edwin Salinas as the defendant, even when discussing the Family Court matter.

. The Bronx Defenders, although one law office, in fact operates a criminal defense practice and a separate family defense practice pursuant to contracts with the City of New York. The majority of its funding for each practice comes from the separate contracts it has with the City. (City of New York Department of Investigation Report Re: The Bronx Defenders, Jan. 29, 2015 at 2.) The criminal defense practice operates under a contract to provide indigent criminal defense services and the family defense practice operates under a contract to provide legal services to indigent respondents in Family Court article 10 proceedings. (Matter of Wendy P. & Valeria S., decision and order on motion, Fam Ct, Bronx County, May 20, 2015, Sherman, J., docket No. NA-27180-81-13, slip op at 12-13.)

. ACS is permitted under section 1046 (a) (vi) of the Family Court Act to introduce hearsay statements of the alleged abused child rather than have the child testify. The statute, however, prohibits a finding of abuse unless that hearsay is corroborated. ACS is permitted to use “validators,” such as Dr. Treacy, to give expert testimony in an attempt to provide corroboration of the hearsay evidence. (See Matter of Nicole V., 71 NY2d 112, 117-118 [1987].)

. According to ACS, The Bronx Defenders argued that, pursuant to the interim stay of Judge Sherman’s protective order, defense counsel was entitled to possession of the Family Court discovery materials, including the validator’s report and interviews.

. In addition to the discovery provided by the People, defense counsel sought a judicial subpoena for the complainant’s school records, related only to her disclosure of the abuse for the first time to school personnel. The court signed the subpoena, inspected the records in camera, and provided both defense counsel and the People with copies of those records, without redaction.

. This court understands that the child complainant has her own attorney in the Family Court proceeding. It is not clear whether that attorney would have the right to challenge the release of this confidential information. The court is unaware of whether defense counsel notified the child’s attorney of this application.

. ACS submitted a written opposition to defendant’s application. The court heard oral arguments on the motion and the parties filed additional submissions on this issue.

. In this regard, ACS is not correct that the court’s issuance of a subpoena in this criminal case would force ACS to violate Judge Sherman’s protective order. A Family Court judge has no authority over this court’s decisions and orders in this criminal proceeding. As Judge Sherman herself noted, her qualified protective order does not “in any way have any impact on [defendant’s] ability to obtain relevant and material documents for use in the concurrent criminal court proceeding, which his criminal defense counsel may seek in criminal court in accordance with criminal law procedures.” (Matter of Wendy P. & Valeria S., Fam Ct, Bronx County, July 21, 2014, Sherman, J., docket No. NA-27180-13, slip op at 16.)

. The court inquired of a number of Bronx Family Court judges regarding their practices in issuing protective orders in article 10 proceedings. The court did not contact Judge Sherman, whose protective order is discussed in this decision.

. For example, it appears that some judges do not permit a represented defendant to possess copies of the records themselves, and some require the parties to return all records to the court at the end of the proceedings. Judges also vary in whether they permit criminal defense counsel to appear and participate in the Family Court proceedings.

. School records remain confidential pursuant to the Family Educational Rights and Privacy Act (20 USC § 1232g); ACS records pursuant to Social Services Law § 422 (4) (A); individually identifiable health information pursuant to HIPAA (42 USC § 1320d et seq., as added by Pub L 104-191, 110 US Stat 1936; 45 CFR 164.502 et seq.); patient information pursuant to Public Health Law § 18; information disclosed to a physician pursuant to CPLR 4504 (a); to a psychologist pursuant to CPLR 4507; to a social worker pursuant to CPLR 4508 (a); and mental health records pursuant to Mental Hygiene Law § 33.13 (c).

. The court rejects ACS’s arguments that these are mental health records that are governed by HIPAA or by the psychologist privilege in CPLR 4507. The complainant did not seek treatment from Dr. Treacy; ACS retained Dr. Treacy to interview the child and give an expert opinion in court.

. In a decision handed down two days before this court’s decision, Judge Sherman noted that criminal defense counsel was not representing defendant in the article 10 proceeding because the family defense division of The Bronx Defenders had already been assigned. (Matter of Wendy P., decision and order on motion, Fam Ct, Bronx County, May 20, 2015, Sherman, J., docket No. NA-27180-81/13, slip op at 4.) Judge Sherman, as noted, is now *804 permitting defendant to retain defense counsel as pro bono counsel and permitting access to the Family Court documents, subject to the terms of her qualified protective order and the erection of a firewall. Judge Sherman also held that defense counsel was not permitted to use any of the Family Court discovery materials “in any way whatsoever in the Criminal Court proceeding” except by order of the Criminal Court. (Id. at 16-17.)

. Defendant’s suggestion that all The Bronx Defenders’ attorneys are fungible and interchangeable is not availing. The City contracts with The Bronx Defenders to provide representation in two different courts, and the attorneys specialize in either Criminal or Family Court practice. Although providing a “holistic” approach to representation may require attorneys from different practice areas to consult and confer with each other, it is inaccurate to imply that attorneys from the criminal defense practice and the family defense practice cover each other’s cases.

. This decision need not and does not address the issue of whether, in the absence of a protective order, an attorney may disclose or share information contained in confidential discovery documents, as opposed to the documents themselves, or whether the defendant himself may make that disclosure. These issues are not before this court. However, attorneys must strictly comply with any restrictions imposed by a Family Court judge’s protective order. Even if obtained lawfully and in compliance with the relevant statutes and orders, the information cannot be used in a criminal proceeding absent the authorization of the judge in the criminal proceeding. (See e.g. Kayla S., 46 Misc 3d at 752-753.)

. For example, any person who willfully permits or encourages the disclosure of information contained in the Statewide Central Register of Child Abuse and Maltreatment, to someone who is not permitted access to that information, is guilty of a class A misdemeanor. (Social Services Law § 422 [12].) The failure to comply with the rules concerning access to any video recording of interviews of children alleged to have been sexually abused is punishable by contempt of court. (22 NYCRR 205.86 [d].) Finally, a HIPAA violation in which a person knowingly discloses individually identifiable health information subjects that person to a fine of $50,000 and/or one year of imprisonment. (42 USC § 1320d-6 [b], as added by Pub L 104-191, 110 US Stat 1936, § 1177 [b].)