STATE V. MONDRAGON

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**JOSEPH L. MONDRAGON,**
**Defendant-Appellant.**

Docket No. A-1-CA-35899
COURT OF APPEALS OF NEW MEXICO
May 20, 2019

APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY, Fred T. Van Soelen, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM for Appellee

Bennett J. Baur, Chief Public Defender, Allison H. Jaramillo, Assistant Appellate Defender, Santa Fe, NM for Appellant.

**JUDGES**

MEGAN P. DUFFY, Judge. WE CONCUR:  M. MONICA ZAMORA, Chief Judge, JENNIFER L. ATTREP, Judge

**AUTHOR:** MEGAN P. DUFFY

**MEMORANDUM OPINION**

**DUFFY, Judge.**

**{1}**     A jury convicted Defendant Joseph Mondragon of eight counts of criminal sexual contact of a minor (CSCM) (Counts 1-4, 8, 10, 11, and 13) and three counts of criminal sexual penetration (CSP) (Counts 5, 6, and 12). Defendant raises the following issues on appeal: (1) double jeopardy and due process violations; (2) sufficiency of the evidence for certain convictions; (3) error in allowing the State to amend the indictment;

and (4) improper admission of vouching testimony. We conclude that the evidence was insufficient to support Defendant's conviction under Count 11. The remaining convictions are affirmed.

**BACKGROUND**

**{2}**     Alfonso and Jennifer, parents of the minor victims in this case, discovered sexually explicit text messages from Defendant, Alfonso's middle-aged cousin, to their ten-year old daughter (A.B.1) on her phone in December 2013. Alfonso contacted the police and further investigation by detectives and a Sexual Assault Nurse Examiners (SANE) nurse revealed evidence that Defendant had sexually abused all three of their daughters, A.B.1 (ten years old at trial), A.B.2 (nine years old at trial), and V.B (seventeen years old at trial), to varying degrees from 2010 to 2013.

**{3}**     The daughters and their brother, M.B, who was not a victim in this case, testified at trial about specific incidents of abuse with particularity, describing what occurred, where the abuse occurred, and their ages when the abuse began. Their testimony also suggested that the abuse was ongoing and occurred periodically from 2010 to 2013. During this three-year period, the family lived at five different addresses: Defendant's trailer (Trailer) in 2010, a house on Rosa Street, a house on Sheridan, a house on Cypress, and finally their current address (Current House), where the family lived in December 2013 when Defendant's text messages to A.B.1 were discovered. Alfonso and Jennifer testified that Defendant stayed with the family at each of these residences at some point and was often trusted to babysit the children while they were away. We reserve further discussion of the pertinent facts for our analysis.

**{4}**     The jury found Defendant guilty of eight counts of CSCM in the second degree, contrary to NMSA 1978, Section 30-9-13(B) (2003): four involving A.B.1 (child under 13) (Counts 1, 2, 3, and 4), three involving A.B.2 (child under 13) (Counts 8, 10, and 11), and one involving V.B. (child thirteen to eighteen by person in a position of authority) (Count 13). The jury also convicted Defendant of two counts of CSP in the first degree, contrary to NMSA 1978, Section 30-9-11(D) (2009) involving A.B.1 (child under 13) (Counts 5 and 6), and one count of CSP in the second degree, contrary to Section 30-9-11(E) involving V.B. (child thirteen to eighteen by use of force or coercion) (Count 12).

**DISCUSSION**

**I.     Due Process and Double Jeopardy**

**{5}**     Defendant argues that his right to due process and his right to be free from double jeopardy were violated by his convictions for multiple "carbon-copy" counts based on factually indistinguishable incidents. Specifically, Defendant argues that his convictions for three counts of CSCM committed against A.B.1 (Counts 1, 2, and 3), and three counts of CSCM committed against A.B.2 (Counts 8, 10, and 11) are based on course-of-conduct evidence rather than separate, distinct incidents. We review Defendant's due process and double jeopardy arguments de novo. *See State v.*

*Dominguez*, 2008-NMCA-029, ¶ 5, 143 N.M. 549, 178 P.3d 834 (reviewing similar due process and double jeopardy arguments de novo).

{6}    "Procedural due process under the Fourteenth Amendment to the United States Constitution requires the [s]tate to provide reasonable notice of charges against a person" such that criminal defendants have a fair opportunity to prepare a defense and to protect themselves from double jeopardy. *Id.* In order to satisfy the requirements of due process and fair notice, every count in an indictment must be linked to a particular, distinguishable criminal act. *Id.* ¶¶ 1, 10. This Court has held that notice is adequate when a child or other witness provides facts to identify specific incidents of abuse. *Id.* ¶ 10. We remain mindful that "there exists a profound tension between the defendant's constitutional rights to notice of the charges against him and to present a defense, and the state's interest in protecting those victims who need the most protection." *State v. Baldonado*, 1998-NMCA-040, ¶ 20, 124 N.M. 745, 955 P.2d 214 (internal quotation marks and citation omitted). Moreover, we can appreciate that "young children cannot be held to an adult's ability to comprehend and recall dates and other specifics[,]" and, consequently, "have been less vigorous in requiring specificity as to time and place when young children are involved than would usually be the case where an adult is involved." *Id.* ¶¶ 20, 21 (internal quotation marks and citation omitted).

{7}    In this case, of the counts challenged by Defendant on appeal, only Counts 1 and 2 are identical—involving the same alleged conduct, victim, and charging period. Defendant did not request a bill of particulars or statement of facts before trial, nor did he at any time before trial claim that he had insufficient information to prepare his defense. *See State v. Altgilbers*, 1989-NMCA-106, ¶ 46, 109 N.M. 453, 786 P.2d 680 (declining to consider lack of notice for the first time on appeal, particularly since the defendant did not request a statement of facts before trial). Indeed, before trial, Defendant received discovery of the victim's interviews through the State's production of the SANE reports. And upon an examination of the evidence at trial as set forth below, we find no due process or double jeopardy violation in this case.

{8}    Counts 1, 2, and 3 charged Defendant with criminal sexual contact of A.B.1, a minor under the age of thirteen. A.B.1 testified that Defendant touched her private parts for the first time when she was five or six years old and that it happened in Defendant's room in the Trailer. A.B.1 testified that Defendant touched her "many times," and indicated that there were between ten and fifteen incidents of abuse, with the last incident occurring on December 8th, 2013, when A.B.1 was 7 years old, according to testimony from the SANE nurse who examined A.B.1 on the day after that incident. A.B.1, however, testified with particularity about four distinct incidents of abuse that occurred: (1) in Defendant's room in the Trailer, where he touched her "lower privates" with his hand "under her clothes"; (2) in the living room of her "old house"; (3) in the bedroom of her "old house"; and (4) in the family's Current House. The SANE nurse testified that A.B.1 told her that Defendant put his fingers into her vagina and anus and that it hurt badly. She further testified that an examination of A.B.1 on the day after the last incident of abuse revealed that her vaginal opening beyond the labia was red and irritated and her urine showed signs of an infection.

**{9}** Similarly, Counts 8 and 10 charged Defendant with committing CSCM against A.B.2, a minor under the age of thirteen. A.B.2 testified that she was six years old the first time Defendant touched her, and that he touched her like "ten or . . . fifteen times," both under her clothes and on top of her clothes. She, however, described two distinguishable acts—one incident that occurred on the floor of the Trailer, which involved Defendant touching the "front part" of her privates, and one incident that occurred on the couch at the Current House, where he reached up her skirt and touched her "front part." As we discuss below, we reverse Count 11 for lack of substantial evidence and, accordingly, do not consider it in our analysis here.

**{10}** Because all of these counts have distinguishing factual bases, we reject Defendant's argument that these counts should have been charged under a single course-of-conduct theory. *See Dominguez*, 2008-NMCA-029, ¶ 10 (holding that the state may pursue prosecution of distinct offenses when they are based on distinguishing facts or circumstances); *State v. Gardner*, 2003-NMCA-107, ¶ 28, 134 N.M. 294, 76 P.3d 47 (indicating that separate charges were appropriate when victims specifically described separate incidents of abuse); *Altgilbers*, 1989-NMCA-106, ¶ 56 (upholding convictions for CSP and CSC when victims gave specific accounts of the acts and the locations in which the acts occurred, even though they could not provide specific dates). We, therefore, conclude that Defendant's due process and double jeopardy rights have not been violated.

## II. Sufficiency of the Evidence

**{11}** Defendant argues that the evidence is insufficient to support his convictions for Counts 5, 6, 12, and 13. "To determine whether the evidence presented was sufficient to sustain the verdict, we must decide whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Brietag*, 1989-NMCA-019, ¶ 9, 108 N.M. 368, 772 P.2d 898. We view the evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "[T]he jury is free to reject Defendant's version of the facts[,]" *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829, and we do not consider the merit of evidence that may have supported a different result. *State v. Kersey*, 1995-NMSC-054. ¶ 11, 120 N.M. 517, 903 P.2d 828.

## A. Counts 5 & 6

**{12}** Counts 5 and 6 are identical and charge Defendant with CSP in the first degree of A.B.1, a child under the age of thirteen, for causing A.B.1 to engage in fellatio. Section 30-9-11(D). Defendant argues that the evidence was insufficient to support these two counts because A.B.1, a reluctant witness, denied engaging in fellatio. Defendant contends that the remaining testimony was insufficient to support two separate charges. We disagree.

**{13}**     The SANE nurse testified that A.B.1 told her that Defendant forced her to perform fellatio on him but did not specify the number of times A.B.1 said she performed fellatio. All three of A.B.1's siblings, however, described witnessing separate instances in which A.B.1 appeared to be performing fellatio on Defendant. A.B.2 stated that she saw A.B.1 underneath the blankets in M.B.'s room in the daytime; Defendant's hand was pushing A.B.1 down and the blankets were going up and down. V.B. testified that she saw Defendant and A.B.1 on the living room couch at night with A.B.1's head moving underneath the blankets. M.B. testified that he saw Defendant and A.B.1 on the bed in M.B.'s room, under the sheets, with A.B.1's head going up and down. Pictures of the following texts messages sent from Defendant to A.B.1 were also presented to the jury as exhibits:

> Only if u delete
> Don't. Let Nana read our texts
> K ill show u
> Do u want to learn?
> I want to teach u how to kiss
> Do u still delete
> Because I want u to
> I want u to suck it hard
> Wud u do it longer
> How long
> My thing
> Will I still suck it
> So I can put it in u?
> U love me?
> I want to
> Don't let Nana read ur text
> U look pretty
> Not tonight but make sur u delete

**{14}**     Notwithstanding A.B.1's denial and that the SANE nurse's testimony did not specify the number of times A.B.1 said she engaged in fellatio, the jury could reasonably have found that Defendant committed two distinct acts of CSP by forcing A.B.1 to engage in fellatio based on her siblings' testimony. *See State v. Orosco*, 1992-NMSC-006, ¶ 30, 113 N.M. 780, 833 P.2d 1146 (concluding there was sufficient evidence where the victim's prior inconsistent statements were adequately corroborated); *see also Rojo*, 1999-NMSC-001, ¶ 19 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts."). We affirm Defendant's convictions for Counts 5 and 6.

## B.     Count 12

**{15}**     Defendant was convicted of Count 12, CSP in the second degree involving V.B. by the use of force on a child thirteen to eighteen years of age. Section 30-9-11(E)(1).

Defendant argues that this conviction should be reversed because the State failed to present sufficient evidence to establish that Defendant used force, an essential element of this charge.

**{16}** "[F]orce or coercion" in the context of CSP is defined by statute as "the use of physical force or physical violence[.]" Section 30-9-10(A)(1). This Court has recognized that "[t]he issue is not how much force or violence is used, but whether the force or violence was sufficient to negate consent." *State v. Huff*, 1998-NMCA-075, ¶ 12, 125 N.M. 254, 960 P.2d 342; *see id.* ¶ 4 (finding sufficient evidence of force when the defendant caused the victim pain by squeezing her breast and making it difficult for her to breathe); *see also State v. Perea*, 2008-NMCA-147, ¶ 12, 145 N.M. 123, 194 P.3d 738 (finding sufficient evidence of force when the defendant isolated the victim by driving her to a secluded dirt road, removed the victim's pants and locked the car doors before reclining her seat to climb on top of her, and pushed her legs apart and persisted when she told him to stop). "Physical or verbal resistance of the victim is not an element of force or coercion." Section 30-9-10(A)(5).

**{17}** In the present case, V.B. testified that she went to learn how to drive with Defendant four or five times when she was thirteen or fourteen years old. V.B. stated that Defendant would pick her and take her to a dirt road, and that the only way she was allowed to drive was if she sat on his lap. Every time V.B. went with Defendant, he would touch her upper and lower "lady parts." While she was in his lap, he would put his hands inside her shirt and under her bra. She testified that he also put his hand inside her pants and underwear to touch her "lady parts" and would also put his fingers inside her vagina. V.B. told Defendant to stop and that it hurt but he did not listen. In addition, the SANE nurse testified that V.B. told her Defendant had touched V.B. and inserted his fingers into her vagina, which was "very painful." Based on the foregoing and in line with our prior holdings in *Perea* and *Huff*, we conclude that a rational jury could have reasonably determined that Defendant used physical force in committing CSP against V.B. We affirm Defendant's conviction for Count 12.

## C.  Count 13

**{18}** Defendant was convicted of Count 13, CSCM in the second degree involving V.B. "Second-degree CSCM occurs when the perpetrator touches the unclothed intimate parts of a child thirteen to eighteen years of age and is in a position of authority over the child and uses that authority to coerce the child to submit." *State v. Arvizo*, 2018-NMSC-026, ¶ 14, 417 P.3d 384 (internal quotation marks and citation omitted). Defendant argues that the evidence was insufficient to support the jury's finding that he used his position of authority as a relative to coerce V.B. to submit to sexual contact under Count 13. We disagree.

**{19}** Section 30-9-10(E) defines "position of authority" as "that position occupied by a parent, relative, household member, teacher, employer or other person who, by reason of that position, is able to exercise undue influence over a child[.]" Section 30-9-10(E). Defendant, as a relative and godfather of V.B., meets this statutory definition. *See State*

*v. Erwin*, 2016-NMCA-032, ¶ 9, 367 P.3d 905 (stating that "a perpetrator need only fall within any of the designated relationships [specified in Section 30-9-10(E)] to hold a position of authority"). Thus, the issue we must decide is whether there was sufficient evidence presented at trial to establish that Defendant used his position of authority to coerce V.B. to submit to sexual contact.

**{20}** "Coercion for the purposes of CSCM occurs when a defendant occupies a position which 'enables [him] to exercise undue influence over the victim and that influence must be the means of compelling submission to the contact. Such coercion might take many forms but is less overtly threatening than physical force or threats.' " *Gardner*, 2003-NMCA-107, ¶ 22 (quoting UJI 14-926, Comm. commentary). "Submission to the request of an authority figure is coerced if it is achieved through undue influence or affected by external forces." *State v. Gillette*, 1985-NMCA-037, ¶¶ 30-31, 102 N.M. 695, 699 P.2d 626 (finding that defendant coerced victim through his position of babysitter of the family home). "Common sense and experience teaches us that children generally yield to the wishes of adults. This is particularly true where an adult, such as an employer, has supervisory control." *State v. Trevino*, 1991-NMCA-085, ¶ 6, 113 N.M. 804, 833 P.2d 1170; *see id.* ¶ 5 ("In light of [the] defendant's ability to place [the victim] in a confined, private workstation and [the victim's] testimony that he was scared, we believe the jury could infer that defendant used his position of authority to coerce [the victim] to submit to the sexual contact."). "The exercise of undue influence resulting in the submission to sexual contact can be inferred by a child's reluctance or fear to report the sexual contact." *Arvizo*, 2018-NMSC-026, ¶ 21 (holding that the defendant's status as the victim's uncle combined with testimony from the victim that she did not report the abuse because she was afraid to upset the family dynamic was enough to infer that she had been "coerced through subtle social or domestic pressure on the part of the perpetrator"); *Trevino*, 1991-NMCA-085, ¶ 4 ("Use of a position of authority to coerce sexual contact may be proven inferentially.").

**{21}** There are several facts from which the jury could infer coercion. Defendant was V.B.'s godfather and was often entrusted by her parents to babysit V.B. and her siblings. She testified that Defendant would take her out in his truck to "go driving" on a secluded dirt road and that he would only let her drive if she sat on his lap. Like the defendant in *Trevino*, Defendant used his position as an authority figure to place V.B. into a situation where she would be confined, isolated, and vulnerable. 1991-NMCA-085, ¶ 4. V.B. testified that she was afraid of Defendant and so she never told her parents that she did not want to go anywhere with him. A jury could reasonably have inferred from this evidence that Defendant, based on his status as an adult family member who was occasionally put in charge of the children, was able to use his position of authority to accomplish sexual contact with V.B. *See Arvizo*, 2018-NMSC-026, ¶ 21. We affirm Defendant's conviction for Count 13.

**D.    Remaining Counts**

**{22}** We exercise our discretion to examine whether sufficient evidence supported Defendant's convictions out of concern that the State's failure to present substantial

evidence of the crimes charged may implicate fundamental error. *See State v. Clemons*, 2006-NMCA-031, ¶ 10, 139 N.M. 147, 130 P.3d 208 ("We *sua sponte* raised the question whether there was sufficient evidence presented by the [s]tate to satisfy each element set forth in [the jury instruction] because the [s]tate's failure to come forward with substantial evidence of the crime charged implicates fundamental error and the fundamental rights of [the d]efendant."). "The doctrine of fundamental error is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand." *State v. Barber*, 2004-NMSC-019, ¶ 14, 135 N.M. 621, 92 P.3d 633 (internal quotation marks and citation omitted). This Court requested supplemental briefing by the parties on certain counts. Having considered the supplemental briefing submitted by the parties on the sufficiency of the evidence on Counts 1, 2, 3, 5, 6, 8, 10, and 11 and conducted a full examination of the record, we conclude that Count 11 must be reversed.

**{23}** Count 11 charged Defendant with CSCM of A.B.2 "on or about the 13th day of October, 2013." From the State's supplemental briefing on this count, we understand that the charge relates to an incident that occurred right after V.B.'s quinceañera. However, no evidence was introduced to identify who the victim was in that incident or to establish any of the other essential elements of this charge. The charging date in Count 11 is the date of V.B.'s fifteenth birthday. On the second day of trial, Detective Smith, the investigating detective, was asked how he constructed the charging periods in the indictment. After discussing the matter generally, he stated:

> [Detective Smith] One of the events in this case, with one of the children, occurred right after older sister's quinceañera. And she said, at the quinceañera, this is when . . .
> [Defense Counsel]: Objection, hearsay, Your Honor.

**{24}** The prosecutor withdrew the statement but the trial judge did not strike it from the record. There is no other testimony or evidence in the record to establish the identity of the victim in the incident related to the quinceañera. The only way the jury could have deduced that Detective Smith was referring to A.B.2 in his testimony above was by looking at jury instructions, which identified her as the victim.

**{25}** A.B.2's testimony established that she was six years old the first time Defendant touched her (i.e., sometime in 2012), that she was touched a total of ten to fifteen times, and that the abuse was ongoing when she was between the ages of six and eight. She described two specific instances—one on the floor of the Trailer and one on the couch at Current House—which form the bases of Counts 8 and 10. Nothing in A.B.2 or any other witness's testimony links A.B.2 to the incident occurring at V.B.'s quinceañera. Moreover, no evidence was introduced to establish an act of touching to support this charge. In the absence of any evidence relating to the essential elements of this charge, Count 11 is reversed.

**{26}** As to the remaining convictions for Counts 1, 2, 3, 5, 6, 8, and 10, there was sufficient evidence of multiple, separate acts of CSCM and CSP presented at trial to support Defendant's convictions, and, as discussed previously, Defendant has advanced no meritorious due process or double jeopardy violations in this case. Given this, and because this case does not present an exceptional circumstance where an indisputably innocent person has been convicted, the doctrine of fundamental error does not compel further consideration or reversal of the remaining convictions. *See id.* ¶ 8 ("The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice."); *State v. Rodriguez*, 1970-NMSC-073, ¶ 10, 81 N.M. 503, 469 P.2d 148 ("The doctrine of fundamental error is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand."); *State v. Stein*, 1999-NMCA-065, ¶ 9, 127 N.M. 362, 981 P.2d 295 ("No error is more fundamental than the conviction of an innocent person, and no right of a party is more fundamental than the right not to be convicted when innocent. Accordingly, we have held that the question of sufficiency of the evidence to support a conviction may be raised for the first time on appeal.").

### III.    Amendment of Charges

**{27}** Defendant argues that the district court erred in allowing the State to amend the charging document after the close of evidence. The district court permitted the State to amend the date range for Count 12 from October 13, 2011 to December 31, 2011, to October 13, 2011 to October 13, 2012, and to expand the list of body parts included in Count 10. Defendant contends that the modifications violated his due process right to notice and prejudiced him in his ability to present an "uninvestigated alibi defense that he could have raised to the charges involving V.B."

**{28}** Rule 5-204(C) NMRA allows the indictment or information to be amended to conform to the evidence "unless such variance prejudices substantial rights of the defendant." Prejudice exists when the defendant is unable to reasonably anticipate from the indictment the nature of the proof the State will produce at trial. *State v. Marquez*, 1998-NMCA-010, ¶ 20, 124 N.M. 409, 951 P.2d 1070 ("A variance is not fatal unless the accused cannot reasonably anticipate from the indictment what the nature of the proof against him will be."). The charging document "need not contain exacting detail as long as the defendant is given sufficient notice of the charges." *State v. Stevens*, 2014-NMSC-011, ¶ 50, 323 P.3d 901 (affirming district court's decision to allow the state to change the dates associated with the alleged offenses after the defendant had presented an alibi defense at trial). A defendant's mere assertion of prejudice from an amendment to the indictment is insufficient to warrant reversal. *Marquez*, 1998-NMCA-010, ¶ 20. "We review a district court's interpretation and application of Rule 5-204 de novo." *State v. Branch*, 2010-NMSC-042, ¶ 19, 148 N.M. 601, 241 P.3d 602, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 & n. 6, 275 P.3d 110.

**{29}** Here, Defendant argues that he was prejudiced in his ability to present an uninvestigated alibi. In particular, Defendant asserts that, if he had known about the

extended charging period, he could have argued he lost access to his employer's truck in March 2012 due to a DWI. Defendant argues that he did not investigate this potential alibi because the initial charging period (October to December 2011) did not include the period during which he supposedly lost access to the truck. We find Defendant's argument unpersuasive. V.B. testified to two specific instances of sexual abuse—one in which Defendant inserted his fingers in her vagina (Count 12) and one in which Defendant touched her breast (Count 13)—both of which occurred in Defendant's truck. While the original charging period for Count 12 extended only to December 31, 2011, the charging period for Count 13 extended from October 13, 2011 to October 13, 2012, well beyond the date of Defendant's DWI in March 2012. Given this, we have difficulty grasping how the amendment of the timeframe in Count 12 prejudiced Defendant's ability to claim an alibi defense when he already faced charges (Count 13) involving abuse in the truck after his DWI. In addition, we agree with the district court that the incomplete alibi of not having a license for some part of the amended time frame did not constitute a cognizable showing of prejudice, observing that "having a revoked license does not keep someone from driving." The amendment of the charging period for Count 12 did not prejudice Defendant. *See Stevens*, 2014-NMSC-011, ¶ 51 (stating that "mere speculation of how he would have conducted his defense differently does not rise to the level of prejudice that is required for an acquittal" (internal quotation marks and citation omitted)).

**{30}** Defendant also asserts that he was prejudiced by the amendment of Count 10, which initially charged Defendant with touching only the breast of A.B.2 and was amended to add her "groin, mons veneris, vulva, or vagina." Defendant did not preserve this claim of error so it is reviewed for fundamental error. *See* Rule 12-216(B)(2) NMRA (2016)[1] (providing an appellate court the discretion to review questions of fundamental error or fundamental rights as an exception to the preservation rule). Defendant argues on appeal that he was prejudiced by the enlargement of body parts included in Count 10 because "he was not on notice to defend against other types of touching for [C]ount [10]." We reject Defendant's argument, as he was already on notice that he was accused of touching A.B.2's vaginal area and buttocks in Counts 11 and 9. *See Marquez*, 1998-NMCA-010, ¶ 20 (finding that amendment did not prejudice the defendant because he was aware of the nature of the charges against him, knew the identity of the alleged victim, and was aware of the mistake in the date from the beginning of the trial). Having failed to establish prejudice, the amendment of Count 10 was not in error and does not rise to the level of fundamental error. *See State v. Jaramillo*, 1973-NMCA-029, ¶ 11, 85 N.M. 19, 508 P.2d 1316 (concluding that variance between indictment and instructions did not rise to the level of fundamental error when there "is substantial evidence in the record to support the verdict of the jury").

## IV.   Vouching

**{31}** Defendant argues that the State elicited improper "vouching" testimony from Detective Smith that referred to the children's credibility and to evidence not in the record. Because these arguments were not preserved at the trial level, Defendant asks

---

1Rule 12-216 was recompiled and amended as Rule 12-321 NMRA, effective December 16, 2016.

us to review the admission of this testimony for plain error. *See* Rule 11-103(E) NMRA ("A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved."); *State v. Walters*, 2007-NMSC-050, ¶ 18, 142 N.M. 644, 934 P.2d 282 ("In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." (internal quotation marks and citations omitted)). To find plain error, "we must be convinced that admission of the testimony constituted an injustice that creates grave doubts concerning the validity of the verdict." *State v. Lucero*, 1993-NMSC-064, ¶ 12, 116 N.M. 450, 863 P.2d 1071 (internal quotation marks and citation omitted). "Further, in determining whether there has been plain error, we must examine the alleged errors in the context of the testimony as a whole." *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (alteration, omission, internal quotation marks, and citation omitted). Plain error is "an exception to the general rule that parties must raise timely objection to improprieties at trial," and therefore it is to be used sparingly. *State v. Torres*, 2005-NMCA-070, ¶ 9, 137 N.M. 607, 113 P.3d 877.

**{32}**    Our Supreme Court has previously evaluated claims of vouching or bolstering in the context of improper statements made by a prosecutor in "vouching for the credibility of a witness, either by invoking the authority and prestige of the prosecutor's office or by suggesting the prosecutor's special knowledge." *State v. Pennington*, 1993-NMCA-037, ¶ 27, 115 N.M. 372, 851 P.2d 494; *see also State v. Alberico*, 1993-NMSC-047, ¶ 85, 116 N.M. 156, 861 P.2d 192 ("expressly prohibit[ing] direct testimony regarding the credibility or truthfulness of the alleged victim of sexual abuse").

**{33}**    Defendant first argues that the prosecutor elicited vouching testimony when he asked Detective Smith whether the charges against Defendant were based on the OASIS interview and the SANE exam, to which the Detective responded, "yes, sir." The OASIS interview and SANE exam were not admitted into evidence, although the SANE nurse who performed the exam testified at trial. Defendant argues on appeal that Detective Smith's status as a trained police officer suggested to the jury that all of the charges were supported by evidence he observed in the unadmitted SANE report and OASIS interview and that they need not scrutinize each count. We disagree. Detective Smith only made a passing acknowledgement that he considered the OASIS report and SANE exam, and both documents were the subject of witness testimony at other points during trial. Detective Smith's testimony did not amount to improper vouching, nor, considering the context of the testimony as a whole, did its admission constitute an injustice that creates grave doubts concerning the validity of the verdict. *See State v. Dylan J.*, 2009-NMCA-027, ¶ 15, 145 N.M. 719, 204 P.3d 44 ("examin[ing] the alleged [plain] errors in the context of the testimony as a whole" (internal quotation marks and citation omitted)); *see also Torres*, 2012-NMSC-016, ¶ 9 (finding prosecutor's reference to citation that did not come into evidence was improper but did not call for a mistrial).

**{34}**    Defendant also argues that Detective Smith gave improper vouching testimony regarding the credibility of the children's testimony when the prosecutor asked, "Do you have any information during your investigation that these children were unduly

influenced in this case?" and he responded he responded "No. No sir, not at all." The statement was elicited on redirect after defense counsel cross-examined Detective Smith about whether it was protocol to interview children with a parent present and whether that might influence the children's answers. Defendant does not persuade us that Detective Smith's response emphasized or bolstered the credibility of the children's testimony nor that its admission calls the validity of the verdict into question, particularly in light of the totality of the evidence in this case. We conclude that Detective Smith's isolated statements do not constitute plain error requiring reversal. *See Dylan J.*, 2009-NMCA-027, ¶ 15("examin[ing] the alleged [plain] errors in the context of the testimony as a whole." (internal quotations and citation omitted)); *Torres*, 2005-NMCA-070, ¶ 9 (stating that the plain error rule applies only in evidentiary matters and "only if we have grave doubts about the validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding" (internal quotation marks and citation omitted)).

**CONCLUSION**

**{35}**    For the aforementioned reasons, we reverse Defendant's conviction for Count 11 and remand this case to the district court with instructions to vacate that conviction and to resentence Defendant accordingly. We affirm the remaining convictions addressed in this appeal.

**{36}    IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**JENNIFER L. ATTREP, Judge**